## Erie Railroad Company, Appellee, v. Neiman Brothers Company, Appellant.

### Gen. No. 37,599.

Opinion filed June 26, 1935. Rehearing denied July 10, 1935.

T. F. LARAMIE, of Maywood, for appellant.

FOLLANSBEE, SHOREY & SCHUPP, of Chicago, for appellee; CLYDE E. SHOREY, LOREN P. OAKES, of Washington, D. C., and GERHARDT S. JERSILD, of Chicago, of counsel.

Mr. Justice Hall delivered the opinion of the court.

This is an appeal from a judgment for $362.70 entered against the defendant in the municipal court of Chicago. The statement of claim filed in the case on June 19, 1930, recites in substance that defendant caused to be delivered to plaintiff at Chicago, Illinois, on or about March 8, 1929, and March 15, 1929, two cars of sugar, to be delivered by plaintiff to Cleveland, Ohio, with instructions to notify the Meyers Grocery Company, care of the Liberty Cartage Company of that city; that plaintiff as a common carrier transported the sugar to Cleveland and notified the Meyers Grocery Company and the Liberty Cartage Company, and delivered the sugar to them on or about March 13, 1929, and March 25, 1929, and that thereby the defendant became liable to pay plaintiff for all lawful freight charges assessed against such shipment, in accordance with the schedules and tariffs of the Interstate Commerce Commission. It is further alleged that plaintiff had rendered defendant a statement of the amount of the charges amounting to $372.60, but the defendant had refused to pay.

In its affidavit of merits the defendant denied that the shipments were made on the dates alleged, but that on March 11, 1929, and March 18, 1929, the defendant shipped certain carloads of sugar to the Meyers Grocery Company, subject to sight drafts and bills of lading f. o. b. Chicago, and that at the destination of the sugar, the Meyers Grocery Company could only receive the same upon presentation of the bills of lading, which it could only get by paying the sight draft and all freight charges and other accrued charges, and that plaintiff issued its bills of lading accordingly; that the defendant, after procuring such bills of lading, transmitted them to Cleveland with sight draft attached for collection and that the drafts were paid; that a bank in

Cleveland released the bills of lading to the Meyers Grocery Company, and that plaintiff, through its own negligence or oversight, delivered the two cars of sugar to the Meyers Grocery Company without requiring the Meyers Grocery Company to pay the freight and accrued charges, which action, it is alleged, defendant never authorized. Defendant further states in its affidavit of merits that the two cars of sugar were sold f. o. b. Chicago, that all accrued freight charges should have been paid by the consignee, that plaintiff knew such to be the fact when it issued its bills of lading, that defendant did not become liable for the freight charges because it sold the two cars of sugar to the Meyers Grocery Company f. o. b. Chicago, subject to all freight charges, and that plaintiff was aware of this fact. The defendant further states that it did not order or direct the plaintiff to deliver the cars of sugar before receiving its freight charges.

The case was tried on a stipulation of facts as follows:

"It is hereby stipulated and agreed by and between the parties hereto, by their respective attorneys, that the following stipulation of facts be submitted to the court as a complete statement of facts in this cause in lieu of any other testimony, with exception only that the parties hereto may offer in evidence the original and duplicate bills of lading in the possession of the parties and admitted to have been signed by the parties hereto, also with the right to defendant to offer in evidence that it executed the 'Without Recourse' clause thereon and the right to plaintiff to offer evidence to the contrary.

"1. Plaintiff, Erie Railroad Company, a corporation, charges that there is due it from defendant the sum of $362.70 as freight charges for transporting two cars of sugar.

"2. On March 11, 1929, defendants transshipped through Chicago, Milwaukee & St. Paul Railway and via Erie Railroad Company six hundred (600) 100 pound bags of sugar weighing 60,450 pounds at Chicago, Illinois, via Car Number 152610 consigned to its own order at Cleveland, Ohio, with directions to notify Meyers Grocery Company, Care of Liberty Cartage Company, Cleveland, Ohio, as evidenced by certain bills of lading issued by plaintiff to defendant under date of March 11, 1929, as provided in the bill of lading. Likewise, on March 18, 1929, the defendant transshipped through Chicago, Milwaukee & St. Paul Railway and via Erie Railroad Company another car of six hundred (600) 100 pound bags of sugar weighing 60,450 pounds at Chicago, Illinois, via Car Number 716382 consigned to its own order at Cleveland, Ohio, with directions to notify Meyers Grocery Company, Care of Liberty Cartage Company, Cleveland, Ohio, as evidenced by certain bills of lading issued by plaintiff to defendant under date of March 18, 1929, as set forth in the bills of lading, and which bills of lading plaintiff adopted as its own.

"3. That both of said shipments were transported by plaintiff as a common carrier from Chicago, Illinois, to Cleveland, Ohio, and the plaintiff notified the Meyers Grocery Company, assignee of said two cars, and the Liberty Cartage Company of the arrival of said two shipments as was provided for in said bills of lading so issued by the Chicago, Milwaukee and St. Paul Railroad Company, the initial carrier at Chicago, and which bills of lading plaintiff has adopted in the transportation from Chicago, Illinois, to Cleveland, Ohio, of said two cars of sugar.

"4. That plaintiff had been advised and had knowledge that there was an agreement between defendant and said Meyers Grocery Company whereby the freight

charges on both shipments from Chicago to Cleveland, Ohio, had to be paid by the Meyers Grocery Company to plaintiff, before plaintiff could deliver the aforesaid two cars of sugar to said Meyers Grocery Company, the assignee of the consignee at the time of the presentment of the bills of lading by the Meyers Grocery Company. That the defendant transmitted the original bills of lading duly endorsed by itself with its invoices and a sight draft attached, to a bank at Cleveland, Ohio, which collected from the Meyers Grocery Company the amount of the purchase price of the sugar, but not the freight charges, and said bills of lading, properly assigned by the defendant to the Meyers Grocery Company together with the invoices, were released by the bank at Cleveland, Ohio, to the Meyers Grocery Company, and thereafter said Meyers Grocery Company presented to plaintiff said bills of lading and obtained delivery of said two cars of sugar, without plaintiff demanding payment of said freight and transportation charges from said Meyers Grocery Company.

"5. That at that time it was the usual practice of the plaintiff and customary at plaintiff's warehouse at Cleveland, Ohio, that freight charges had to be paid by an assignee of a consignee, before the assignee could have delivered to it the merchandise so transported. That in the case of both of the foregoing shipments, plaintiff, through the error of one of its clerks in having marked the freight charge bills as paid, released both of said shipments to the Meyers Grocery Company without demanding and collecting the freight and transportation charges on said two cars from Cleveland, Ohio.

"6. The plaintiff thereafter discovered its error, and demanded the freight charges from Meyers Grocery Company, but failed to collect the same or any

part thereof from said Company, or any other source. That about fifteen months afterwards, plaintiff made demand for the freight charges on defendant and defendant refused to pay it, and on June 19, 1930, plaintiff filed this suit against defendant in this cause.

''7. It is hereby stipulated and agreed that the facts hereinabove set forth are true.

''8. It is further stipulated and agreed that no question will be made as to the Erie Railroad Company, a corporation, being the proper party plaintiff. That there is no dispute that the proper charges for transporting the shipments as aforesaid amount to $362.70. The question to be raised is as to the liability of the defendant for the aforesaid charges of $362.70 on the facts hereinabove set forth.''

In addition to the stipulation, plaintiff offered the original bills of lading in evidence, and it was admitted that they bore the signatures of plaintiff and the signatures of defendant. Each bill of lading contains the following clause, which was not signed by defendant:

''If this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement. The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

. . . . . . . . . . . . . . . . . . . . . . .

''If charges are to be prepaid, write or stamp here, to be prepaid.

. . . . . . . . . . . . . . . . . . . . . . .''

The position of the plaintiff is that under the Federal Interstate Commerce Act, plaintiff was without power to enter into an agreement releasing the consignor from its liability, and that since the railroad would not be bound by an agreement made with itself, it could not be bound by mere knowledge of an agreement which the consignor made with the consignee with reference

to which party should pay the charges. The case of *New York Cent. R. Co. v. Lehigh Stone Co.*, 220 Ill. App. 563, is cited as authority for this contention. In that case, the New York Central Railroad Company, being engaged in interstate commerce, received at Lehigh, Illinois, from the defendant company a carload of stone for shipment from Lehigh to Schneider, Indiana, and thence to Danville, Illinois, over plaintiff's tracks, where it was transferred to another railroad which transported it to Flat Rock, Illinois. A bill of lading was issued for the freight charges, and the charges not having been paid, suit was brought by the railroad company, resulting in the judgment of the circuit court in favor of defendant. On appeal, the Appellate Court reversed the circuit court, and said:

"Under the Interstate Commerce Act of 1887, and the amendments thereto, when goods are delivered to a common carrier by a consignor to be shipped by interstate commerce to a consignee, by freight, the terms of the contract between the consignor and the carrier with reference to the freight charges differ from other contracts. The parties themselves do not fix the terms of the contract, but those terms are fixed by law. Even if the consignor and carrier should agree upon terms differing from those imposed by the Interstate Commerce Act, their contract could not prevail to change the consignor's liability. *Central of Georgia Ry. Co. v. Birmingham Sand & Brick Co.*, 9 Ala. App. 419; 10 Corpus Juris 445. . . .

"Delivery of the freight to the consignee is not a condition precedent to the consignor's liability for the freight charges, but when the goods are delivered to the common carrier for interstate shipment and accepted by such carrier for such shipment, the status of the consignor and the carrier is, at that instant, fixed as debtor and creditor as to the freight charges, and

the common carrier has the right to demand prepayment of such charges. *Indianapolis & St. L. Ry. Co. v. Herndon,* 81 Ill. 143; *Lehigh Val. Transp. Co. v. Post Sugar Co.,* 228 Ill. 121. . . .

"When defendant delivered the car of stone in question to plaintiff for interstate shipment and the car was accepted by plaintiff for such shipment, defendant became primarily liable to pay the freight charges and the status of the parties as debtor and creditor was thereby fixed, and there being no evidence to the contrary the presumption is that such status continued until the time of the trial and the court should have found in favor of plaintiff in error."

In *New York Cent. R. Co. v. Philadelphia & Reading Coal & Iron Co.,* 286 Ill. 267, an action was brought by the New York Central Railroad against the Philadelphia and Reading Coal & Iron Co. to recover freight charges on a carload of coal shipped by the Philadelphia and Reading Coal & Iron Co. from Pennsylvania to Chicago. The plaintiff recovered a judgment, which was appealed to the Appellate Court, which court certified the case to the Supreme Court, and the judgment was affirmed. In that case, the facts as stated by the Supreme Court in its opinion were as follows:

"The coal was delivered in Pennsylvania to a carrier on February 14, 1912, by said coal company, consigned to itself at Chicago. At Buffalo the coal was delivered to appellee, which transported it to Chicago, where it arrived February 19, 1912. On February 20, 1912, appellant by an order in writing directed that the car of coal be forwarded to A. F. Cook & Co., who had purchased the same and agreed to pay the freight thereon, at Pullman, Illinois, via the Illinois Central railroad, the order stating, 'Charges follow.' The coal was delivered to Cook & Co. about March 6, 1912, and appellee at the time demanded the payment of the freight charges, but the same were not paid. It appears

that several demands were made later for the same but without avail, and on September 19, 1912, appellee brought suit against Cook & Co., in the municipal court of Chicago and recovered judgment for the amount of the freight on December 13, 1912, which judgment still remains unsatisfied. On September 22, 1914, appellant was first notified by appellee that the freight charges had not been paid. On the last mentioned date Cook & Co. became and have ever since been insolvent and have ceased to do business.'' In its opinion, the Supreme Court said:

''The evidence in the record tends to show that shippers and merchants throughout the country ship great quantities of coal and other commodities to various persons throughout the United States over the lines of the railroad companies, and that the almost universal practice and custom in such shipments is for the shippers not to prepay the freight charges thereon and for the railroad companies to waive their right to such prepayment and to accept payment thereof from the consignees.'' In passing upon the questions there involved, the Supreme Court further said:

''The Federal act of 1887 to regulate commerce controls in this and similar transactions. Appellee had no right to release appellant from liability to pay the freight, and had it attempted to do so such action would have been unlawful. 'The necessary effect of all these decisions construing and applying the Inter-state Commerce act, when considered together, is . . . that the carrier cannot by any act estop itself from exacting the lawful freight rate. If the carrier could so estop himself, then it would lie within the carrier's power, by purposely putting itself in a position where it could not exact the lawful rate of a shipper it desired to favor, to render nugatory one of the main designs of the act,—the prevention of discrimination between shippers; and for the law to countenance the doctrine

of estoppel in cases like this, is for the law to say, through the courts, that the carrier is estopped from doing what the statute mentioned plainly requires that it must do,—collect the lawful rate in all cases, and nothing greater and nothing less by any means or device whatsoever.' *Central of Georgia Railway Co. v. Birmingham Co.*, 9 Ala. App. 419. See, also, to the same effect, *Baltimore and Ohio Southwestern Railway Co. v. New Albany Box and Basket Co.*, 48 Ind. App. 647; *Bush v. Keystone Driller Co.*, 199 S. W. 597."

We are of the opinion that, under the facts as set forth and under the authorities, the trial court was not in error in finding for plaintiff and in entering the judgment herein. The judgment is, therefore, affirmed.

*Affirmed.*

HEBEL, P. J., and WILSON, J., concur.