## PENNSYLVANIA RAILROAD CO v UNITED COLLIERIES INC.

Ohio Appeals, 1st Dist, Hamilton Co

No 5316. Decided Jan 10, 1938

Maxwell & Ramsey, Cincinnati, for Appellee.

Francis T. Martin, Cincinnati, for Appellant.

### OPINION

By MATTHEWS, J.

From the allegations in the petition, all of which were admitted by the defendant, and from the stipulation of the parties it

72

appeared that the plaintiff, a common carrier of freight by railroad, accepted two shipments of coal at Weirton, West Virginia, to be transported to Detroit, Michigan. The Hanna Coal Co. was the consignor or shipper in each instance. It was also the consignee in one instance. In the other, the consignee was United Collieries, Inc., the defendant. In the one instance in which The Hanna Coal Co. was the consignee, it ordered delivery to be made to United Collieries, Inc. while the coal was in transit, and thereupon, likewise while the coal was in transit United Collieries, Inc. ordered delivery to be made to Crescent Coal Co. of this coal as well as the coal that had been consigned to it originally.

These shipments were evidenced by straight bills of lading, upon the face of which were printed the following, with the exception of the signature "Hanna Coal Co., Cleveland, Ohio", which was a stamp impression: "Subject to Section 7 of Conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. HANNA COAL CO., Cleveland, Ohio."

The signature is that of Hanna Coal Co., placed thereon at the time of the issuance of the bills of lading.

The notice to deliver to Crescent Coal Company was in writing as follows:

"Cincinnati, Ohio, Feb. 16, 1933.
Pennsylvania Ry.,
3rd & Larned,
Detroit, Michigan.
Attention: Inbound Car Desk.
Gentlemen:

Please reconsign the following cars, protecting the lowest through rate:

Initial & No. Now Consigned Reconsign to
P R R US. Crescent Fuel Co.
165818 DET. Detroit
 via P R R via U B

Advance Order: (Yes) Freight charges to follow car (Yes).

Confirming telephone conversation with mail time 9:30 A. M.

When these reconsignments have been effected, please advise R. H. Scholze, Traffic Manager, 829 Dixie Terminal Bldg., Cincinnati, Ohio.

Yours very truly,
UNITED COLLIERIES INCORPORATED
by Kyle."

The plaintiff delivered the coal to Crescent Coal Company without requiring prepayment in cash of the freight. That company did deliver its check to the plaintiff in payment of the freight, but this check was not honored by the bank. During the period between May 10th and November 27th, 1933, payments totaling $81.75 were made by Crescent Coal Company, and these payments were applied by the plaintiff upon the freight on the coal consigned to itself originally. Later a receiver was appointed for the assets of Crescent Coal Company.

On September 12th, 1934, the plaintiff demanded payment of the balance ($143.39) from the defendant, and upon its refusal this action was instituted in the court of common pleas of Hamilton county. That court, on the authority of New York Central Company v Warren Ross Lumber Co., 234 N. Y. 261, 137 N. E. 324, rendered judgment for the plaintiff and this appeal on questions of law is prosecuted from that judgment.

We are of the opinion that the case relied upon by the trial court sustains its conclusion. It is true that there was no provision exempting the original consignor from liability for freight in that case such as is in this case, but it seems clear to us that that provision is not available to this appellant. It was not the original consignor. It did not sign the provision. That provision operated to prevent recourse upon Hanna Coal Co., as consignor for the freight. While the statutes make bills of lading negotiable in a sense, they certainly do not give to them greater negotiability than that possessed by bills and notes. An endorsement without recourse by the payee of a negotiable instrument does not impart that same quality to all subsequent endorsements. The liability of subsequent endorsers depends upon their own contracts and if they desire to restrict their liability, their respective endorsements must be couched in appropriate language to that end. So it is with transferees of bills of lading. If a transferee desires to restrict his liability for freight and confine the recourse of the carrier to the ultimate receiver of the shipment, it must be accomplished by his contract with the carrier at the time of the transfer of the bill of lading.

In 9 Am. Jur., 797, it is said:

"Undoubtedly, the decisions are agreed that one who receives or exercises domin-

ion over goods by ordering a reconsignment, in the absence of some further element of fact which clearly destroys the presumption of ownership or contract thereby established, is responsible for freight charges accruing up to the time of such receipt or reconsignment order."

This statement is supported by the citation of Pennsylvania R. Co. v Lord & Spencer, ——— Mass. ———, 3 N. E. (2d) 231, 105 A. L. R. 1211; New York C. R. Co. v Warren Ross Lumber Co., 234 N. Y. 261, 137 N. E. 324, 24 A. L. R. 1160, and Pennsylvania R. Co. v Marcelletti, (256 Mich. 411, 240 N. W. 4) 78 A. L. R. 923. In the annotations to these cases are found substantially all of the cases on this subject. In the annotation in 105 A. L. R., at 1316, is found the origin of the statement in the text with the supporting authorities:

"Undoubtedly the decisions are agreed that one who receives or exercises dominion over goods by ordering a reconsignment, in the absence of some further element of fact which clearly destroys the presumption of ownership or contract thereby established, is responsible for freight charges accruing up to the time of such receipt or reconsignment order. Chicago, I. & L. R. Co. v Monarch Lumber Co. (1916) 202 Ill. Ap. 20; New York C. R. Co. v Platt & B. Coal Co. (1925) 236 Ill. Ap. 150; Pere Marquette R. Co. v American Coal & Supply Co. (1925) 239 Ill. App 139; Indiana Harbor Belt R. Co. v Lieberman (1927) 245 Ill. App. 503, infra; Pennsylvania R. Co. v Lord & Spencer (Mass.) (reported herewith) ante, 1211; New York C R. Co. v Warren Ross Lumber Co., (1922) 234 N. Y. 261, 137 N. E. 324, 24 A. L. R. 1160; New York C. R. Co. v Satuloff (1923) 122 Misc. 119, 202 N. Y. S. 297; New York C. R. Co. v Maloney (1930) 137 Misc. 751, 244 N. Y. S. 394; West Jersey & S. R. Co. v Whiting Lumber Co. (1919) 71 . Pa. Super. Ct. 161; Delaware, L. & W. R. Co. v Andrews Bros. Co. (1927) 90 Pa. Super. Ct. 574; Pennsylvania R. Co. v Rothstein (1935) 116 Pa. Super. Ct. 156, 176 A. 861."

Now does the evidence show that the defendant exercised dominion over these shipments? An examination ██ of the written notice to reconsign, quoted herein, is sufficient to answer this question in the affirmative. A reconsignment is presumptively an exercise of dominion.

Then did the defendant use appropriate language to avoid the liability which would otherwise attach because of ██ the exercise of dominion?

The only language in the notice to divert pertinent to this subject is: "Freight charge to follow car: Yes." It is not sufficient under the authorities. The language of the notice to divert the shipment is not inconsistent with the thought of the continued liability of the original consignee. The cases hold that similar language is not sufficient to prevent liability attaching to the original consignor. The same reasoning demonstrates its inadequacy to prevent liability attaching to a consignee who recognizes the shipment or assigns the bill of lading. The cases cited in the Annotations in the American Lawyers' Reports herein referred to, with only two exceptions noted support this conclusion. These exceptions are Chesapeake & Ohio R. Co. v Southern Coal Co., 254 Ill. App. 238, and Cleveland, C. C. & St. L. R. Co. v Southern Coal Co., 147 Tenn. 433. These cases involved shipments prior to 1927, and, therefore, they were not influenced by the amendment of March 4th, 1927 to C. 510, sec. 1, Title 49 (44 Stat. 447) 49 U. S. C. A. sec. 3 (2), as later cases were. Furthermore, the former case is distinguishable on the facts, and the latter case was an action against the consignor and the statement of the liability of a consignee was pure obiter.

The most recent case on this subject coming under our observation is that of New York Central R. Co. v Brown, et al., 274 N. W. 715 (——— Mich.———), and in it the court referred to most of the existing decisions on the subject, and among others, Chesapeake & O. R. Co. v Southern Coal & Coke Co., supra, and New York Central R. Co. v Warren Ross Lumber Co., supra. The sole question was whether a re-consignment by a consignee, in the absence of rebutting evidence, was such an exercise of ownership as to make the consignee liable for the freight, notwithstanding the delivery of the goods to the re-consignee notwithstanding re-consignor's instruction that freight was to follow the goods. The Court refused to follow Chesapeake & Ohio R. Co. v Southern Coal Co., supra, and held the re-consignor liable for the freight on the authority of New York Central R. Co. v Warren Ross Lumber Co., supra, and the other cases referred to in this opinion. The court referred to New York Central R. Co. v Warren Ross Lumber Co. as the leading case on the subject

and quoted from the opinion in the case to support its own conclusion as follows:

"When it wrote the letter directing the delivery without notifying 'he plaintiff that it was not the owner of the goods, it acted either as consignee or volunteer. We may not assume that its letter was the act of a meddler. We must therefore presume that it wrote as consignee. It follows that it accepted the goods by an act of ownership when it exercised dominion over them by giving directions for their delivery and the plaintiff was justified in treating it as owner of the goods. Penn. R. R. Co. v Titus, 216 N. Y. 17, 109 N. E. 857, L. R. A. 1916 E, 1127, Ann. Cas. 1917 C, 862. It thereby entered into the contract expressed in the bill of lading to pay the charges and become liable to pay such charges unless the words 'deliver * * * upon payment of freight charges' discharged its liability when the carrier neglected to collect on delivery to the Schieck-Johnson Company.

"The liability of the consignee under these conditions is analogous to the liability of the consignor under the terms of the bill of lading that the consignee shall pay the freight. Such a direction does not exonerate the consignor from liability. The directions given by defendant neither modified the implied contract between carrier and consignee whereby the consignee assumed liability for freight charges, nor amounted to an offer to accept the goods only on condition that freight charges should be collected of the Scheck-Johnson Company. Doubtless plaintiff might have refused to deliver to the Schieck-Johnson Company and retained the goods until its lien was satisfied by the payment of the freight. Doubtless defendant by its instructions recognized such right when it qualified its directions as to delivery. But the directions were for the benefit of the carrier, not for the benefit of the defendant. The carrier was not bound at its peril to enforce payment of freight from the Schieck-Johnson Company, and its right to resort to the defendant under the contract was not impaired by delivery of the freight under its directions. The language used in defendant's letter was not contractual. Its effect was merely to give plaintiff an option to demand payment from the person to whom it delivered the goods."

While not directly in point the cases of C. L. Hils Co. v Louisville & Nashville Rd. Co., 28 Oh Ap. 459, (6 Abs 320) and S. A.

Gerrard Co. v New York, New Haven & Hartford Ry. Co., 39 Oh Ap. 84, (9 Abs 261) support the proposition that any exercise of dominion by the consignee impose a liability upon him for the freight, the court in the latter case citing New York Central R. Co. v Warren Ross Lumber Co., supra, with approval.

It is urged that the appellee should be estopped from asserting this claim against the appellant. In a somewhat similar case (Pittsburgh, C. C. & St. L. Ry. Co. v Fink, 250 U. S. 577) against a consignee, the court said at pages 582 and 583:

"Nor can the defendant in error successfully invoke the principle of estoppel against the right to collect the legal rate. Estoppel could not become the means of successfully avoiding the requirement of the act as to equal rates, in violation of the provisions of the statute. New York, New Haven & Hartford R. Co. v York & Whitney Co., 215 Massachusetts, 36, 40."

See also: New York Central R. Co. v Frank & Buck Co., 41 P. (2d.) (Cal.) 549.

We are also of the opinion that the facts in this record fail to show the necessary elements of estoppel, were that defense available to the defendant.

For these reasons, the judgment is affirmed.

ROSS, PJ, & HAMILTON, J, concur.