## NEW YORK CENT. R. CO. v. LITTLE-JONES COAL CO.

No. 45134.

District Court, N. D. Illinois, E. D.
June 30, 1938.

338

Sidney C. Murray, of Chicago, Ill., for plaintiff.

Henry M. Hilton,, of Chicago, Ill., for defendant.

## SULLIVAN, District Judge.

This is an action at law brought by plaintiff, a common carrier, to collect unpaid freight charges amounting to $167.49 accruing on two interstate shipments of coal. The two shipments in question were made from Bevier, Kentucky, one on November 30th, 1934, and the other on December 6th, 1934, consigned to defendant at Streator, Illinois. The complaint in the case was filed on February 26th, 1936. Defendant filed its answer on March 31st, 1936. April 28th, 1938, stipulation of facts was filed. May 11th, 1938, an additional stipulation of facts was filed, and the cause set down for trial. By agreement of the parties a jury has been waived and the cause submitted to the court on the pleadings and the stipulation of facts.

The originating carrier in this case, the Louisville and Nashville Railroad Company, on receiving the two shipments above referred to, issued straight uniform bills of lading, copies of which are attached to the original stipulation of facts as exhibits. In both bills of lading the defendant was designated as both shipper and consignee, and the so-called "no recourse clause," provided for in Section 7 of "Contract Terms and Conditions," printed on the back of the Bills of Lading, was signed by the defendant.

Subsequently, at defendant's direction, the shipments were reconsigned to the Metal Products Company at Streator, Illinois. The reconsigning orders, copies of which are also attached to the original stipulation of facts, contained the following notation: "Charges follow. We are not responsible for freight charges."

Both shipments were delivered to the Metal Products Company at Streator, without collecting the freight charges, which amounted to $209.36 on the two cars. Thereafter, in January, 1935, the Metal Products Company filed a petition for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, in which case plaintiff filed a proof of claim covering the freight charges in question. Under the Reorganization Plan plaintiff received a note covering 50% of its claim, and later the Metal Products Company paid 40% of the note in full settlement thereof, thereby reducing the total amount of freight due on the two shipments to $167.49, which is the amount plaintiff seeks by this action to recover from defendant.

It is plaintiff's contention that defendant is liable as consignee for the freight charges on these shipments, notwithstanding that it ordered the cars reconsigned in transit, and irrespective of the terms of the reconsignment orders. That the cars were shipped under Bills of Lading containing the so-called "no recourse" but that this clause protects only the consignor from liability for freight charges.

The Bills of Lading constitute the contracts between the parties, and Section 7 of the Terms and Conditions reads in part as follows: "The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property; but, except in those instances where it may lawfully be authorized to do so, no carrier by railroad shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of the bill of lading that the carrier shall not make delivery without requiring payment of such charges, and the carrier, contrary to such stipulation, shall make delivery without requiring such payment the consignor

(except as hereinafter provided) shall not be liable for such charges."

The face of the Bill of Lading contains the following provision:

"Subject to Section 7 of Conditions if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement:

" 'The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.'

"_____

"Signature of Consignor."

▆▆▆ From a reading of this "no recourse" clause it seems quite evident that it is designed to protect the shipper if ultimate delivery is made without collecting the freight charges. In this case it was signed by the consignor, who was the shipper, and as such is relieved of liability. However, defendant was also the consignee; and the question before me is whether or not defendant, as consignee (notwithstanding that it was also the shipper and consignor), having reconsigned the shipments, is liable for the unpaid freight charges.

Plaintiff's brief calls to attention that Section 7 of the present form of Bill of Lading was discussed in the report of the Interstate Commerce Commission, In the Matter of Bills of Lading, 52 I.C.C. 671, where it was said:

"The shippers propose that there be inserted in the bill, immediately following the words, 'face of this bill of lading,' the additional words, 'or in a written order of reconsignment.' * * *

"We do not regard the shippers' proposal favorably. Its effect would be to impose upon the carrier additional risk and responsibility, not in respect of any common-law or statutory duty of transportation, but in respect of the security of compensation for its services. The end desired by the shippers has to do with the convenience and security of their oftentimes speculative and impromptu commercial transactions. The business of the carrier is to furnish transportation. Its legal obligations are confined to transportation and the duties incident thereto. It is not obligated to assume risks for the convenience of the consignor which have no direct relationship to its service of transportation."

In the case of New York Central Railroad Company v. Warren Ross Lumber Co., 234 N.Y. 261, 137 N.E. 324, 24 A.L.R. 1160, the defendant, who was the original consignee, by letter directed the carrier to deliver a car to a third party "upon payment of charges." The New York Court of Appeals said [page 325]:

"It follows that it accepted the goods by an act of ownership when it exercised dominion over them by giving directions for their delivery and the plaintiff was justified in treating it as owner of the goods. * * *

"But the directions were for the benefit of the carrier, not for the benefit of the defendant. The carrier was not bound at its peril to enforce payment of freight from the Schieck-Johnson Company, and its right to resort to the defendant under the contract was not impaired by delivery of the freight under its direction. The language used in defendant's letter was not contractual. Its effect was merely to give plaintiff an option to demand payment from the person to whom it delivered the goods."

In Dare et al. v. New York Central R. Co., 2 Cir., 20 F.2d 379, twenty-eight cars of oats were shipped from Wisconsin and Illinois under order Bills of Lading running to various consignees in New York City. The Bills of Lading were endorsed in blank by consignees and pledged to the Dare Company as security for money loaned by them to Brainard Commission Company. Dare & Company endorsed the Bills of Lading and delivered them to the New York Central with instructions to deliver the oats "for our account" to named vessels for export. The letter of instruction also stated "freight and all charges collect from Brainard Commission Company." The New York Central made delivery as ordered and presented freight bills to the Brainard Commission Company, which it found to be insolvent. The New York Central then brought an action against Dare & Company to recover the outstanding charges. The court there said [page 380]: "Even if it be assumed that the consignee might substitute another's obligation for his own, a mere direction in the order of delivery to collect freight from another would not be sufficient. The case of N. Y. Cent. R. R. Co. v. Ross Lumber Company, 234 N.Y. 261, 137 N.E. 324, 24 A.L.R. 1160, so holds, and we concur in this view. There should be some effective substitution by novation, or other-

wise, so that the new debtor would become legally bound to the carrier for freight before the consignee is freed."

In the case of Wabash R. Co. v. Horn et al., 7 Cir., 40 F.2d 905, defendant wrote a letter to the carrier directing it to reconsign the car in question to another party "allowing all charges to follow the car." The court said [page 906]:

"Prior to the request of defendants on September 21st for reconsignment, they had become owners of the car of lumber. The original bill of lading controlled the shipment until October 5th. We are of opinion that defendants, by reason of their ownership and their reconsignment letter, made themselves parties to the following provision in section 8 of each bill of lading: 'The owner or consignee shall pay the freight and all other lawful charges accruing on said property,' and thereby became liable to pay the freight.

"Plaintiff's bill of lading of October 5th was accepted by defendants, and was yet held by them at the commencement of this suit. Under plaintiff's bill of lading, defendants were consignees. As against the Globe Trading Company, they retained title. So far as known to plaintiff, defendants were then the owners of the lumber and the Globe Trading Company was their agent. We are of opinion that the obligation of defendants to pay the freight was absolute, and that the provision allowing 'all charges to follow the car,' in the reconsignment letter was of no force." Citing cases.

In Illinois, the reasoning in the case of New York Cent. R. Co. v. Warren Ross Lumber Company, supra, has been followed in these cases: Mellon v. Landeck, 248 Ill.App. 353; New York Central R. Co. v. Platt & Brahm Coal Co., 236 Ill.App. 150; Indiana Harbor Belt R. Co. v. Lieberman, 245 Ill.App. 503; Chicago I. & L. Ry. Co. v. Monarch Lumber Company, 202 Ill.App. 20.

The three Illinois cases cited by defendant in its brief hold the opposite view. These are all decisions by the Illinois Appellate Court; no case in the Illinois Supreme Court has been called to my attention, and I have been unable to discover any, which has passed on this exact question. However, I agree with the reasoning in the case of New York Central R. Co. v. Warren Ross Lumber Co., supra, and the cases which sustain it.

There is nothing in the instant case which would indicate to plaintiff that defendant was acting only as an agent in the transactions. So far as the record goes defendant might have disposed of the shipment of coal in any manner it chose. The Bills of Lading as issued gave it the right to have the shipments delivered to it at the point of destination therein designated; or it had the right, if it wished to exercise it, to order a reconsignment of the shipments, which it in fact did. The weight of authority holds that the reconsignment was an exercise of dominion over the shipments which was consistent with ownership thereof by defendant, and is sufficient to fasten upon it liability for the freight charges.

Defendant's liability for the freight charges having become fixed, no subsequent acts or omissions on the part of plaintiff could discharge that liability. In the case of Louisville & N. R. Co. v. Central Iron & Coal Company, 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900, the Supreme Court said [page 442]: "Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor."

Plaintiff is required to collect the full amount of its charges from the person liable therefor. In this case I believe that defendant, when it directed the cars reconsigned to a third party, became liable for the freight charges on each car, and that such liability was not affected by the notations on the reconsignment order to the effect that charges were to follow the car and that the consignee was not responsible for freight charges. Nor did any subsequent acts or omissions on the part of plaintiff discharge defendant from its liability. If this were otherwise, it would be possible to defeat the express purpose of the Statute (49 U.S.C.A. § 6, par. 7), which forbids carriers to discriminate or give rebates in connection with the collection of freight charges.

Judgment may be entered for plaintiff in the sum of $167.49.