**ILLINOIS CENT. R. CO.**

v.

**WESTERN SMELTING & RE-FINING CO.**

**LOUISVILLE & NASHVILLE R. CO.**

v.

**WESTERN SMELTING & RE-FINING CO.**

Civ. Nos. 42–51, 43–51.

United States District Court, D. Nebraska, Omaha Division.

Aug. 27, 1954.

As Corrected Dec. 6, 1954.

Motion for New Trial Denied Dec. 6, 1954.

Baird & Baird (William J. Baird), Omaha, Neb., Burnquist, Helsell & Burnquist (Frank H. Helsell), Fort Dodge, Iowa, for plaintiffs.

Jack W. Marer, Omaha, Neb., for defendants.

DONOHOE, Chief Judge.

These actions, which were consolidated for trial, were instituted by interstate carriers to recover freight charges. Civil Action No. 42–51 was brought by the Illinois Central Railroad Company, an Illinois corporation, against Western Smelting & Refining Company, a Nebraska corporation, to recover freight, demurrage and reconsignment charges and taxes in the sum of $8,862.71. Civil Action No. 43–51 was brought by the Louisville and Nashville Railroad Company, a Kentucky corporation, against Western Smelting & Refining Company to recover freight, demurrage and reconsignment charges and taxes in the sum of $623.10. This court has jurisdiction of both cases by virtue of Section 1337, Title 28 U.S.C.A.; Atlantic Coast Line R. Co. v. New York Casualty Co., D.C.Ga. 1947, 57 F.Supp. 31. Cf. Atchison, T. & S. F. Ry. Co. v. Springer, 7 Cir., 1949, 172 F.2d 346. The cases were tried to the court without a jury, and in keeping with Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A., the court makes the following special

## Findings of Fact

In November of 1950, the defendant Western Smelting & Refining Company owned ten carloads of 3/16 inch steel plates which were at that time located at Baltimore, Maryland. Morton Alpirn, secretary of the defendant, testified that the Modern Welding Company originally purchased this steel from defendant and Alpirn advised Modern Welding that he would ship the cars to Owensboro, Kentucky, and draw a draft on Modern Welding, freight charges collect and that the drafts could be paid after inspection of the steel. On November 14, 1950, Modern Welding wired the defendant to hold the steel until Wednesday, November 16, 1950. This Alpirn agreed to do. Shortly thereafter Alpirn received a call from someone representing the Standard Oil Company, who said that the steel was needed by Modern Welding to build storage tanks for Standard Oil. He informed Alpirn that Modern Welding did not want to pay for the cars all at one time because of the lack of capital so he requested Alpirn to send the cars to Modern Welding on an open bill of lading and Standard Oil would guarantee payment for the steel.

On November 16, 1950, Alpirn received the following telegram from J. F. Hewson of the Standard Oil Company:

1950 Nov 16 am 9 47
Om.Cao 14 Long Ser Pd–Wux
Chicago Ill 16 933A—
Western Smelting & Refining Co—
Attn M Alpirn Omaha Nebr—

Confirming Telephone Conversation With Mr. Alpirn Enter Our Order Gm–10066 For Approximately 400 Tons 3/16″ Prime Hot Rolled Mild Steel Plates Carbon 10–20 Or Less Open Hearth Steel Suitable For Underground Storage Tanks Size Of Plates To Be 25 Per Cent 72 X 240″ Seventy-Five Per Cent 60 X 240″ This Steel To Be Shipped To Standard Oil Company C/O Modern Welding Company, Owensboro, Kentucky And Is Purchased Subject To Inspection And Acceptance As Satisfactory By Standard Oil Company Engineer And Modern Welding Company Engineer At Owensboro—

Standard Oil Co J F Hewson— GM–10066 400 3/16″ 10–20 25 72 X 240″ 60 X 240″—

A letter confirming the telephone call and telegram was also sent to Alpirn by Standard Oil on November 16, 1950. According to both the telegram and letter, the carloads of steel were to be shipped to the Standard Oil Company care of the Modern Welding Company, Owensboro, Kentucky.

Defendant, through its secretary, Morton Alpirn, delivered the cars originally to the Pennsylvania Railroad Company for movement out of Baltimore. Alpirn prepared three uniform bills of lading in the form approved by the Interstate Commerce Commission (Matter of Bills of Lading, 52 I.C.C. 671). In these original bills of lading covering the ten cars the defendant was listed as both consignor and consignee. The following non-recourse clause was printed on the face of each of the bills of lading:

Subject to Section 7 of conditions, If this shipment is to be delivered to the assignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges ——————————————————————

Signature of Consignor

Neither Alpirn, nor anyone else on behalf of the defendant, executed the foregoing non-recourse clause contained in each of the bills of lading. However, Alpirn attached the following letter to all of the bills of lading:

"Western Smelting & Refining Co.
"Seventh and Douglas Streets
"Phone Atlantic 3528
"Omaha, Nebraska
"November 28, 1950
"Local Freight Agent
"% Illinois Central RR Co.
"Owensboro, Ky.
"Dear Sir:
"Enclosed please find three Shippers Order Bills of Lading covering 10 carloads of Steel Plates.

"Kindly deliver the cars on Open Bills of Lading to the Modern Welding Company of Owensboro, Kentucky, freight charges collect. Be sure and show Western Smelting & Refining Company as Shipper on the Expense Bills, also mail us copies to Omaha of the Expense Freight Bills on the 10 cars.

"Thanking You,
"Very truly yours,
"Western Smelting & Refining Co.
"M. Alpirn, Sec'y
"MA/j"

This letter together with the bills of lading, which were endorsed on the back by Alpirn, was sent air mail, special delivery, by Alpirn on November 28, 1950, to the local freight agent care of the Illinois Central Railroad Company at Owensboro, Kentucky. It appears that nine of the freight cars were routed to Owensboro via the Illinois Central Railroad, plaintiff in Civil Action No. 42–51, and one car via the Louisville and Nashville Railroad Company, plaintiff in Civil Action No. 43–51.

The cars routed through the Illinois Central were delivered to the Modern Welding Company at Owensboro, Kentucky, on December 4, 1950. No demand for payment was at this time made by the Railroad, upon the Modern Welding Company, which was on the Railroad's

96-hour credit list.[1] Some time after the lapse of the 96-hour extension of credit period, the Railroad made demand upon the Modern Welding Company for payment of the freight charges. This demand for payment was refused and the Railroad did not make any other effort to collect the freight charges from the Modern Welding Company.

On December 19, 1950, the Illinois Central sent the following telegram to the defendant:

KC523 CTA 574

1950 Dec 19 PM 5 48

CT.OWA190 CAK–NL

Owensboro Ky 19—

M Alpirn-Western Smelting and
    Refining Co 7th And Douglas St
    Omaha Nebr—

Modern Welding Co. Mailed You Freight Bills Covering Nine Cars Steel On December Fifty Payment Due Illinois Central Amount $8,862.71 Remittance Not Received Today Kindly Rush Or Advise Reason For Nonpayment—

    J P Flowers Agent Illinois
    Central Rr—

On December 20, 1950, defendant sent the following reply:

          "December 20, 1950

"Mr. J. P. Flowers, Agent

"Illinois Central Railroad

"Owensboro, Kentucky

"Dear Sir:

"We are in receipt of your telegram of December 19th regarding nine cars of Steel delivered to Modern Welding Company in accordance with instructions, per our letter to you of November 28, 1950, which specifically states *freight charges collect.*

"Now nearly three weeks later, you inquire from us the reason for nonpayment of freight bills.

"According to the Elkins Act and the customary procedures in compliance with the regulations of American Association of Railroads and Interstate Commerce Commission, the freight charges should have been collected from the Modern Welding Company within 48 hours, even if they were on the credit list. However, if they were not on the credit list, payment of freight charges should have been accomplished before delivery of the cars.

"It would appear to us, you as Agent, have been very negligent in protecting the interests of the Illinois Central Railroad by not complying with regulations. Please be advised we will not assume any responsibility for the freight charges.

"Without prejudicing our rights, however we will accept return of the entire quantity of Steel loaded in cars at Owensboro, Kentucky, if you are unable to collect charges, and reship the Steel elsewhere. The demand is great for the plates and the market is up about $20.00 per ton.

"Very truly yours,

"Western Smelting & Refining Co.

"M. Alpirn, Sec'y

"MA/m"

On January 11, 1951, the treasurer of the Illinois Central sent defendant a letter making a formal demand for payment of freight and other charges in the sum of $8,862.71.

The carload of steel which was routed via the Louisville and Nashville Railroad Company was delivered to the Modern Welding Company at Owensboro, Kentucky, on December 13, 1950. No demand for the payment of freight and charges was made upon the Modern Welding Company at the time the car was delivered to it but later a freight bill showing charges of $623.10 was mailed the Modern Welding Company but payment was not forthcoming. On January 11, 1951, the treasurer of the Louisville and Nashville Railroad Company sent defendant a letter making a formal demand for payment of freight charges in the sum of $623.10.

1. The extension of credit seems to be in keeping with Ex Parte Order No. 73 of the Interstate Commerce Commission. (Ex. D)

The rate for shipment of steel in the manner involved in this case was fixed and published at 88 cents per 100 pounds, minimum weight 40,000 pounds. Trunk Line Tariff Bureau Freight Tariff, 52–A, I.C.C. No. A686. All parties seem to concede, and the court finds it to be the fact, that the charge of $8,862.71 made by the Illinois Central for transportation of nine cars and the charge of $632.10 made by the Louisville & Nashville for transportation of one car from Baltimore, Maryland, to Owensboro, Kentucky, was the lawful and proper charge for such shipments. The defendant has refused to pay any of these charges.

The defendant did not at any time prior to 1953 advise the plaintiff railroads of the interest, if any, that the Standard Oil Company had in the steel plates by reason of any agreement it had with defendant.

### Discussion

Pursuant to Congressional authority, the Interstate Commerce Commission has prescribed uniform forms of bills of lading, including that involved in this case. Since the clauses of these bills of lading are prescribed by Congress and the Commission in the exercise of the commerce power, such clauses have the force of federal law. Illinois Steel Co. v. Baltimore & O. R. Co., 320 U.S. 508, 64 S.Ct. 322, 324, 88 L.Ed. 259. In that case Chief Justice Stone made the following comment with regard to the non-recourse clause:

"Section 7 of the conditions of the uniform bill of lading provides that the owner or consignee shall pay the freight and all other lawful charges upon the transported property, and except in those instances where it may be lawfully authorized to do so, that no railroad carrier shall deliver or relinquish, at destination, possession of the property covered by the bill of lading until all tariff rates and charges have been paid. Cf. § 3(2) of the Interstate Commerce Act, as amended, 49 U.S.C. § 3(2), 49 U.S.C.A. § 3(2). But it further provides that 'The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges. * * * Nothing herein shall limit the right of the carrier to require at time of shipment the prepayment or guarantee of the charges. * * *'

"Under these provisions, if the nonrecourse clause is not signed by the consignor, he remains liable to the carrier for all lawful charges. The carrier is free to demand payment in advance by the consignor, or it may decline to make delivery to the consignee until the freight charges are paid or guaranteed, or if delivery is made to the consignee without payment, the consignee is also liable for all freight charges."

In the case under consideration the defendant consignor did not execute the non-recourse clause contained in the bill of lading. Under federal law it seems clear that the shipper cannot escape liability for the freight and other lawful charges unless he stipulates by signature in the place provided in the bill of lading that the carrier shall not make delivery without requiring payment of such charges. In Pennsylvania R. Co. v. Marcelletti, 256 Mich. 411, 240 N.W. 4, 5, 78 A.L.R. 923, the consignor did precisely what was done in this case. He consigned a shipment of fruit to himself as consignee without executing the non-recourse clause. He then advised the freight agent by letter addressed to the point of destination to deliver the shipment to "Highland Fruit Company upon payment of all freight and refrigeration charges." The carrier mistakenly undercharged Highland and brought

an action to recover the difference between the lawful charge and the undercharge from defendant. In reversing a judgment for the defendant the Supreme Court of Michigan had this to say:

"Undoubtedly the contract for carriage may embody a provision that the consignor assumes no liability for payment of freight charges and that the carrier is to look for payment to the consignee alone. Such was the contract in King v. Van Slack, 193 Mich. 105, 159 N.W. 157. See, also, Moss Lumber Co. v. Michigan Central R. Co., supra [219 Ala. 593, 123 So. 90]. But the bill of lading in the instant case contains the following provision:

" 'If this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement:

" 'The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. (See section 7 of conditions.) (Signature of Consignor.)'

"This statement was not signed by defendant. Notwithstanding this he claims that, since the carrier knew that delivery was to be made only upon presentation of the written order above noted, which recited that delivery was to be upon payment of all freight and refrigeration charges, defendant was relieved of his obligation to pay the freight the same as though he had signed the above-quoted statement contained in the bill of lading. In this we cannot agree. Instead the conditions under which this shipment was made were practically the same as though there had been indorsed upon the bill of lading a notation that the charges were to be paid by consignee. As held by the authorities hereinbefore cited and many others, in view of the provision in the Interstate Commerce Act (49 U.S.C.A. § 1 et seq.), delivery by the carrier in violation of such a provision will not relieve the shipper from the obligation to pay the freight. There was nothing in the consignor's notice accompanying this shipment reciting that it was 'without recourse' to him, as there would have been had he signed the portion of the bill of lading provided for in such cases. As a matter of law he was chargeable with notice of the published rate for such shipments and that the primary liability of payment was upon him."

■■■■ Counsel for the defendant relies heavily on the proposition that, subject to the rule which prohibits discrimination, the carrier is free to contract with the shipper as to when and by whom the charges of transportation shall be paid. See Louisville & Nashville R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900. However, in determining the contractual obligations of the shipper and carrier the court is obligated to apply the settled rule that stipulations in a bill of lading that the goods are to be delivered to the consignee "he or they paying freight", or any similar provisions, are for the benefit of the carrier, so that delivery to the consignee without collection of the freight will not release the consignor from liability therefor, unless there is some special stipulation amounting to an express agreement, by which the consignor is to be exonerated. Annotations: 24 A.L.R. 1163; 78 A.L.R. 926; 129 A.L.R. 213.

In New York, New Haven & Hartford Railroad Co. v. California Fruit Growers Exchange, 125 Conn. 241, 5 A.2d 353, 354, certiorari denied 308 U.S. 567, 60 S.Ct. 79, 84 L.Ed. 476, the defendant shipped a carload of fruit from California consigned to itself at Providence, Rhode Island. The shipment was made under a uniform bill of lading containing a non-recourse clause similar to the one involved in this case. The non-recourse clause was not executed. After the fruit arrived in Rhode Island the defendant directed the carrier to deliver it to Shore Brothers, Inc. "on payment of freight and all other charges." The

carrier delivered the fruit to Shore Brothers without collecting on a credit arrangement between the carrier and Shore Brothers pursuant to Rules of the Interstate Commerce Commission (Ex Parte Order No. 73). Shore Brothers became insolvent and the carrier sued the defendant. The Supreme Court of Connecticut held the defendant liable, commenting:

"* * * In New York Central R. Co. v. Frank H. Buck Co., 1935, 2 Cal.2d 384, 41 P.2d 547, upon facts similar in all material respects to those of the present case, the consignor was held liable for freight charges, it being said (2 Cal.2d page 392, 41 P.2d page 550): 'The authorities * * * hold without exception, so far as we are advised, that a mere direction by a consignor or consignee liable for the freight that a shipment be carried or diverted "freight collect" or delivered "upon payment of freight charges" or the like, is insufficient to relieve him of such liability,' citing numerous cases, including New York Central Railroad Company v. Warren Ross Lumber Co. [234 N.Y. 261, 137 N.E. 324, 24 A.L.R. 1160] and other cases hereinafter referred to. 'The consignor is primarily liable even where the bill of lading contains a provision imposing liability upon the consignee. Louisville & Nashville R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900. In the present case the consignor was also consignee, with a "notify-party" named in each bill of lading. * * * The fact that the notify-party may also be liable in case he takes possession of the shipment * * * does not alter the primary obligation of the consignor.' "

In Erie R. Co. v. Neiman Bros. Co., 281 Ill.App. 45, it was held that a consignor, who did not execute the non-recourse clause in the bill of lading, was liable for the freight charges where the shipment was made under an agreement between the shipper and consignee for delivery f. o. b. Chicago, and shipment to Cleveland, delivery not to be made without the payment of a sight draft and the freight charges, although the carrier, which had knowledge of the agreement between the parties through its negligence made delivery without requiring the payment of the freight charges.

Other cases holding in substance that the consignor does not exonerate himself of liability by requesting the carrier to deliver the commodity to the consignee "freight charges collect" are Davis v. Ducote, La.App., 145 So. 717; Grand Trunk Western R. Co. v. Makris, 142 Misc. 807, 255 N.Y.S. 443; Moss Lumber Co. v. Michigan Central R. Co., 219 Ala. 593, 123 So. 90; Missouri Pac. R. Co. v. Pfeiffer Stone Co., 166 Ark. 226, 266 S.W. 82; Central of Georgia R. Co. v. Brown, 42 Ga.App. 278, 155 S.E. 787; New York Central R. Co. v. Satuloff, 122 Misc. 119, 202 N.Y.S. 297; Davis v. Ford, 193 N.C. 444, 137 S.E. 328; Southern Pac. Co. v. Oregon Growers' Co-op Ass'n, 127 Or. 364, 272 P. 281; Director General v. Birdsboro Stone Co., 86 Pa.Super. 587; Cleveland, C. C. & St. L. R. Co. v. Southern Coal & Coke Co., 147 Tenn. 433, 248 S.W. 297.

There is authority for the proposition that in a case such as this, the defendant may be held liable for the freight charges not only as consignor but also as consignee. The leading case in support of this rule is New York Central R. Co. v. Warren Ross Lumber Co., 234 N.Y. 261, 137 N.E. 324, 24 A.L.R. 1160. The facts in that case were as follows: On May 16, 1912, the S. L. Eastman Company of Saginaw, Michigan, shipped a car of lumber consigned to defendant, Warren Ross Lumber Company of Jamestown, New York, destination Boston, Massachusetts. Before the arrival of the car at Boston, the Warren Ross Lumber Company wrote the following letter to plaintiff: " 'Dear Sir: Upon arrival of car A.G.S. 8919, consigned to ourselves, please deliver this immediately to Schieck-Johnson Company, of your city, upon payment of freight charges. If

you are not the proper party to handle this matter, please hand it to the official in charge, and oblige, Very truly yours, Warren Ross Lumber Co.'" In compliance with this letter the carrier delivered the car to the Schieck-Johnson Company, but it did not collect the freight charges. The carrier sued the Warren Ross Lumber Company and the court in holding that company liable said:

" * * * While no contractual relation arises between carrier and consignee by the mere designation of the latter as consignee, the consignee becomes liable for the freight charges when an obligation arises on his part from presumptive ownership, acceptance of the goods, and the services rendered and the benefits conferred by the plaintiff for such charges.

"As to plaintiff, defendant stood in the relation of owner of the carload of lumber. The bill of lading designated it as consignee. That fact is in itself evidence of ownership. It does not appear from the agreed facts that plaintiff had knowledge or notice that defendant was not the owner, or that defendant was not in fact such owner. The Schieck-Johnson Company might, for all that appears, have been the agent of defendant whose duty it was to take delivery on its behalf. As defendant was the presumptive owner, if it accepted the freight in the capacity of owner, the law implied a promise on its part to pay the charges. * * * When it wrote the letter directing the delivery without notifying the plaintiff that it was not the owner of the goods, it acted either as consignee or volunteer. We may not assume that its letter was the act of a meddler. We must therefore presume that it wrote as consignee. It follows that it accepted the goods by an act of ownership, when it exercised dominion over them by giving directions for their delivery and the plaintiff was justified in treating it as owner of the goods. (Cases cit-

ed.) It thereby entered into the contract expressed in the bill of lading to pay the charges and became liable to pay such charges".

The consignee's liability for freight charges where it reconsigns the goods to a third person was also recognized in Pennsylvania R. Co. v. F. E. Mathias Lumber Co., 113 Ind.App. 133, 47 N.E.2d 158; Pennsylvania R. Co. v. United Collieries, 59 Ohio App. 540, 18 N.E.2d 1000; New York Central R. Co. v. Little-Jones Coal Co., D.C., 25 F.Supp. 337. The leading case holding that the consignee is not liable is New York Central R. Co. v. Transamerican Petroleum Corporation, 7 Cir., 1939, 108 F.2d 994, 129 A.L.R. 206. Although the court is convinced that this case should not be followed since it represents only the minority, and in truth less rational, view, the present decision need not turn upon the rejection of the principle announced in the Transamerican Petroleum Company case. For in that case the defendant was only the original consignee. In this case the defendant is both consignor and consignee. Consequently even if the court were to accept the doctrine announced in the Transamerican Petroleum Company case and hold the defendant not liable as consignee, the court would still be required, for reasons previously stated, to hold the defendant liable as consignor.

Defendant asserts the doctrine of estoppel against the carrier. The assertion lacks merit. No act or omission by the carrier (except the running of the statute of limitations) can estop or preclude it from enforcing payment of the full amount of the freight charges by a person liable therefor. Louisville & Nashville R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 65, 44 S.Ct. 441, 68 L. Ed. 900. Not even an extension of credit to the reconsignee pursuant to Interstate Commerce Commission Order Ex parte No. 73 estops the carrier from proceeding against the consignor. New York, New Haven & Hartford R. Co. v. California Fruit Growers Exchange, 125 Conn. 241, 5 A.2d 353.

The last contention of defendants deserving of consideration is that they were relieved of liability by Section 3(3) of the Interstate Commerce Act, Title 49 U.S.C.A. § 3(3) which provides in part as follows:

"(3) If a shipper or consignor of a shipment of property (other than a prepaid shipment) is also the consignee named in the bill of lading and, prior to the time of delivery, notifies, in writing, a delivering carrier by railroad or a delivering express company subject to the provisions of this chapter, (a) to deliver such property at destination to another party, (b) that such party is the beneficial owner of such property, and (c) that delivery is to be made to such party only upon payment of all transportation charges in respect of the transportation of such property, and delivery is made by the carrier to such party without such payment, such shipper or consignor shall not be liable (as shipper, consignor, consignee, or otherwise) for such transportation charges but the party to whom delivery is so made shall in any event be liable for transportation charges billed against the property at the time of such delivery, and also for any additional charges which may be found to be due after delivery of the property, except * * *."

The court is of the view that this section is inapplicable in the present case because the requirement of subsection (b) has not been met. Defendant did not notify the carrier in writing that the Modern Welding Company was the beneficial owner of the property. Nor could it have. The evidence indicates that the Standard Oil Company was to become owner of the steel plates after that company inspected and accepted the steel. The Modern Welding Company was merely the agent of the Standard Oil Company for the purpose of delivery. But whatever view is taken under the evidence in this case of the respctive interests of defendant, Standard Oil Company and Modern Welding Company, in the steel at the time of shipment, it seems clear that the carriers were not advised in writing of the beneficial ownership of any of them.

The endorsed bill of lading, together with the letter requesting the carrier to deliver the steel to Modern Welding, did not as defendant suggests, constitute a statement by defendant of Modern Welding's interest in the shipment. For all the carrier knew Modern Welding may, under the arrangement mentioned, have been the agent for defendant. And the bill of lading in this case would indicate only that the defendant owned the steel. See 49 U.S.C.A. § 111; New York Central R. Co. v. Warren Ross Lumber Co., 234 N.Y. 261, 137 N.E. 324, 24 A.L.R. 1160.

For the reasons stated plaintiffs in both cases are entitled to recover the charges demanded. Counsel for plaintiffs shall prepare and submit for approval the appropriate judgment to be entered in this case.