Chesapeake & Ohio Railway Company *v.* Glogora Coal Company

(No. 7119)

Submitted January 17, 1933. Decided April 4, 1933.

(Rehearing denied June 8, 1933)

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for plaintiff in error.

*Rolla D. Campbell,* and *Pogue, Hoffheimer & Pogue,* for defendant in error.

Maxwell, President:

This is an action by a common carrier to recover of the consignor $636.08 freight charges on interstate shipments. On an agreed statement of facts, jury being waived, the trial court found for the defendant. Writ of error was awarded the plaintiff.

In November, 1929, the defendant, Glogora Coal Company, delivered to the plaintiff, Chesapeake & Ohio Railway Company, in West Virginia, five cars of coal for transportation to George S. Cochran & Company at Fort Runyon, Virginia, the shipping and delivery points being non-agency stations. The freight charges were not paid in advance, and the connecting carrier delivered the shipments without collecting the freight of the consignee which then was solvent but later became insolvent and so remains. No effort was made to collect of the consignee.

Bills of lading were not issued. Each car was shipped under what is known as "Mine Card Billing", under usage and custom then prevailing in that district. The said billings were subject to all the terms and conditions of uniform bill of lading. Section 7 of uniform bill of lading is as follows:

"The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property; but, except in those instances where it may lawfully be authorized to do so, no carrier by railroad shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for the freight and other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor shall not be liable for such charges."

At the time of the delivery of said five cars of coal by the coal company to the railroad company for shipment, there was stamped on each of the billings the following:

"Destination carrier shall not make delivery of this freight without collection of freight charges. Signed: Glogora Coal Company."

The defendant takes the position that it thus put itself squarely within the provisions of the above quoted section 7 of the uniform bill of lading and therefore that it cannot be held liable for the freight on these shipments.

The plaintiff takes the position that the matter of contract thus sought to be relied upon by the defendant must yield to the law. Plaintiff insists that its published tariff, in effect at the time these shipments were made, and approved theretofore by the Interstate Commerce Commission, has the effect of statutory requirements from which there cannot be deviation by contract or otherwise. By the said tariff Fort Runyon, Virginia, is designated as one of numerous nonagency stations. The tariff expressly requires that freight on shipments to such stations must be prepaid.

The rule seems unequivocal that railway tariffs which have been approved by the Interstate Commerce Commission, are to be treated as statutes binding upon carrier and shipper alike. *Penna. R. R. Co.* v. *International Coal Co.*, 230 U. S. 184.

Both parties rely upon the case of *L. & N. R. R. Co.* v. *Central Iron Co.*, 265 U. S. 59. There the carrier sued the consignor for the difference between tariff rates and less amount charged and collected from the consignee. Under the facts of that case, the court relieved the consignor of liability. In the opinion, the court thus discussed basic principles:

"The shipment being an interstate one, the freight rate was that stated in the tariff filed with the Interstate Commerce Commission. The amount of the freight charges legally payable was determined by applying this tariff rate to the actual weight. Thus, they were fixed by law. No contract of the carrier could reduce the amount legally payable; or release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor.

\* \* \*

"Ordinarily, the person, from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one. This is true even where the bill of lading contains, as here, a provision imposing liability upon the consignee. For the shipper is presumably the consignor; the transportation ordered by him is presumably on his own behalf; and a promise by him to pay therefor is inferred (that is, implied in fact),

as a promise to pay for goods is implied, when one orders them from a dealer. But this inference may be rebutted, as in the case of other contracts. It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume·any liability whatsoever therefor; or that he should assume only a secondary liability.''

Applying those principles to the case at bar, we are of opinion that in determining whether there was primary obligation upon the consignor to pay the freight, controlling effect must be given to the above mentioned requirement of the published tariff that freight charges on shipments to a non-agency station should be prepaid.

To the suggestion of the consignor that the requirement of the tariff for prepayment of freight is indefinite and does not place any greater liability on the consignor than it does on the consignee for such prepayment, the reply seems obvious that the party who procures the services of a carrier to transport freight to a prepay station does so on the basis of statutory requirements. The primary obligation logically rests·upon him who procures the service to be performed, especially where it does not appear that he was procuring the service for and on behalf of some other person. No contract entered into at the time of shipment can alter requirements of the law.

It follows that there should be judgment for the plaintiff. Therefore we reverse the judgment of the trial court and enter judgment here for the plaintiff.

*Reversed and rendered.*