THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD
COMPANY *v.* CALIFORNIA FRUIT GROWERS
EXCHANGE.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

242

Argued January 3—decided March 8, 1939.

*James W. Carpenter,* and *Preston C. King, Jr.,* of the Washington, D. C., bar, with whom was *Richard F. Berry,* for the appellant (defendant).

*William L. Barnett,* with whom, on the brief, was *Milton W. Goss,* for the appellee (plaintiff).

HINMAN, J. This action is for the recovery of freight and refrigeration charges upon a carload of oranges delivered by the defendant as shipper and consignor to the Atchison, Topeka & Santa Fe Railway Company in California, consigned by the defendant to itself and its district manager and agent at Providence, Rhode Island, and transported by that railroad and intermediate carriers and by the plaintiff as terminal carrier. The shipment was made under a uniform straight bill of lading in form prescribed by the interstate commerce commission. Shortly after the arrival of the car at Providence the defendant, by its district manager, directed the plaintiff, by a written order, to deliver the shipment to Shore Brothers, Inc., "on payment of freight and all other charges." The plaintiff delivered the shipment to that corporation and allowed it to unload and take delivery without first collecting the freight and refrigeration charges, Shore Brothers then having with the plaintiff a credit arrangement, pursuant to a rule of the interstate commerce commission (Ex Parte Order No. 73) which provides that where retention of freight by the carrier until freight charges have been paid will retard prompt delivery or release of equipment or station facilities, the carrier, upon taking precautions deemed by it to be sufficient to insure payment within the period of credit (96 hours) specified in the rule, may relinquish possession and extend credit for the charges. However, the plaintiff was unable to collect any part of the charges because Shore Brothers discontinued business with no discoverable assets.

The bill of lading issued by the plaintiff and signed by the defendant as consignor and shipper provided that every service performed should be subject to the conditions therein, whether printed or written, including the conditions on the back thereof, to which the

shipper agreed and accepted for itself and assigns. It contained among the contract terms and conditions a provision, Section 7: "The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property; but, except in those instances where it may lawfully be authorized to do so, no carrier by railroad shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor shall not be liable for such charges. Nothing herein shall limit the right of the carrier to require at time of shipment the prepayment or guarantee of the charges." On the face of the bill was printed: "If this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. (See Section 7 of conditions)," but this was not signed by the defendant.

Upon the facts found, including the foregoing, conclusions were reached that under the shipping contract the defendant, as consignor, consignee and owner, is liable for the payment of the freight and other charges; in failing to sign the nonrecourse clause defendant, as consignor, remained liable; and that the delivery without first collecting the freight and other charges did not relieve the defendant of its obligation to pay the

same. The appeal attacks these and the other conclusions reached and the failure to conclude, instead, as requested by the defendant in its draft-finding and according to its claims of law.

The rights and liabilities of the parties are governed by the federal laws relating to interstate commerce and the terms of the bill of lading, as interpreted by the federal tribunals. *Alderman Brothers Co.* v. *New York, N. H. & H. R. Co.*, 102 Conn. 461, 464, 129 Atl. 47.

The leading case upon the subject of liability of the parties to a shipment for freight charges is *New York Central R. Co.* v. *Warren Ross Lumber Co.* (1922) 234 N. Y. 261, 137 N. E. 324, 24 A. L. R. 1160. In that case a car of lumber was shipped by S. L. Eastman Company from Michigan, consigned to the defendant at Boston, Massachusetts. Before the car arrived at Boston the defendant instructed the railroad company to deliver it to the Schieck-Johnson Company of that city "upon payment of freight charges." The carrier delivered the shipment, but without collecting the charges. The Schieck-Johnson Company became bankrupt and the carrier brought suit against the defendant for the unpaid charge. Judge Pound, speaking for the court (p. 264), said: "The standard bill of lading provides that the owner or consignee shall pay the freight. Defendant contends that it was the duty of the plaintiff to collect the freight from the Schieck-Johnson Company pursuant to instructions . . . and that delivery without such collection released defendant from any liability therefor. Such contention we cannot sustain. The consignor is ordinarily liable for freight charges. He requires the carrier to perform the service when he delivers the goods for transportation and thereby obligates himself to pay therefor. The usual stipulation in the bill of

lading that the consignee shall pay the freight imposes no obligation on the carrier to insist on payment of the freight before delivery to the consignee. It is not a part of the contract between consignor and carrier that the latter shall collect its bill of the consignee. The carrier may neglect to collect of the consignee and collect of the consignor. . . . But the consignee may also become liable for such charges by its own act. While no contractual relation arises between carrier and consignee by the mere designation of the latter as consignee, the consignee becomes liable for the freight charges when an obligation arises on his part from presumptive ownership, acceptance of the goods and services rendered and the benefits conferred by the plaintiff for such charges. As to the plaintiff, defendant stood in the relation of owner of the carload of lumber. The bill of lading designated it as consignee. That fact is in itself evidence of ownership. . . . When it wrote a letter directing the delivery . . . it accepted the goods by an act of ownership when it exercised dominion over them by giving directions for their delivery and the plaintiff was justified in treating it as owner of the goods. (*Pennsylvania R. Co.* v. *Titus,* 216 N. Y. 17, 109 N. E. 857). It thereby entered into the contract expressed in the bill of lading to pay the charges and became liable to pay such charges unless the words 'deliver . . . upon payment of freight charges' discharged its liability when the carrier neglected to collect on delivery to the Schieck-Johnson Company. The liability of the consignee under these conditions is analogous to the liability of consignor under the terms of the bill of lading that consignee shall pay the freight. Such a direction does not exonerate the consignor from liability. The directions given by the defendant neither modified the implied contract between carrier and

consignee whereby the consignee assumed liability for freight charges, nor amounted to an offer to accept the goods only on condition that freight charges should be collected of the Schieck-Johnson Company. Doubtless plaintiff might have refused to deliver to the Schieck-Johnson Company and retained the goods until its lien was satisfied by payment of the freight. Doubtless defendant by its instructions recognized such right when it qualified its directions as to delivery. But the directions were for the benefit of the carrier, not for the benefit of the defendant. The carrier was not bound at its peril to enforce payment of freight from the Schieck-Johnson Company and its right to resort to the defendant under the contract was not impaired by delivery of the freight under its direction. The language used in defendant's letter was not contractual. Its effect was merely to give plaintiff an option to demand payment from the person to whom it delivered the goods."

*New York Central R. Co.* v. *Federal Sugar Refining Co.* (1923) 235 N. Y. 182, 139 N. E. 234, involved facts similar in substance to those in the *Ross Lumber Co.* case, except that the bills of lading involved were order or notify bills, whereas that in the *Ross Lumber Co.* case was a straight bill. The court held (p. 186) that it could see no reason for a different conclusion. "The difference between [a straight bill of lading and an order or notify bill] lies in the duty which rests upon the railroad. . . . The rule as to freight charges . . . remains the same in both cases. The railroad company may demand the amount from the consignee or it may collect from the consignor. It cannot make an election nor be held to an estoppel without violating the purpose and spirit of the Interstate Commerce Commission Act. In order to prevent preferences, it is obliged to collect its freight charges

and if it cannot get them from one party it must look to the other. Delivery of the goods without collection is no release or waiver of any or either party." In *Georgia, Fla. & Ala. Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 197, 35 Sup. Ct. 541, it was held that the parties could not waive the terms of the contract (bill of lading) under which a shipment was made pursuant to the federal act. "A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed." In *New York Central R. Co.* v. *Frank H. Buck Co.* (1935) 2 Cal. (2d) 384, 41 Pac. (2d) 547, upon facts similar in all material respects to those of the present case, the consignor was held liable for freight charges, it being said (p. 392): "The authorities . . . hold without exception, so far as we are advised, that a mere direction by a consignor or consignee liable for the freight that a shipment be carried or diverted 'freight collect' or delivered 'upon payment of freight,' or the like, is insufficient to relieve him of such liability," citing numerous cases, including *New York Central R. Co.* v. *Warren Ross Lumber Co.* and other cases hereinafter referred to. "The consignor is primarily liable even where the bill of lading contains a provision imposing liability upon the consignee. *Louisville & N. R. Co.* v. *Central Iron & Coal Co.*, 265 U. S. 59, 44 Sup. Ct. 441. . . . In the present case the consignor was also consignee, with a 'notify-party' named in each bill of lading. . . . The fact that the notify-party may also be liable in case he takes possession of the shipment . . . does not alter the primary obligation of the consignor." *New York Central R. Co.* v. *Union Oil Co. of Pennsylvania* (D. C.) 53 Fed. (2d) (1931) 1066, 1067. "It has been authoritatively established that a consignee who receives goods becomes legally bound to pay the freight charges [citing cases]. Even

if it be assumed that the consignee might substitute another's obligation for his own, a mere direction in the order of delivery to collect from another would not be sufficient. The case of *N. Y. C. R. Co.* v. *Ross Lumber Co.* [supra], so holds, and we concur in this view." *Dare* v. *New York Central R. Co.* (C.C.A., 2d Cir., Swan, J., 1927) 20 Fed. (2d) 379, 380; *Wabash Ry. Co.* v. *Horn* (C.C.A., 7th Cir., 1930) 40 Fed. (2d) 905, 906.

In *Louisville & N. R. Co.* v. *Central Iron & Coal Co.*, supra, it is said (p. 65) that in an interstate shipment, the amount of the freight charges legally payable, being determined by applying the tariff rate filed with the interstate commerce commission, was thus fixed by law. "No contract of the carrier could . . . release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor." (p. 67) "Ordinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one. This is true even where the bill of lading contains . . . a provision imposing liability upon the consignee." (p. 65) "But delivery of goods to a carrier for shipment does not, under the Interstate Commerce Act, impose upon a shipper an absolute obligation to pay the freight charges." The carrier and shipper were left free to contract, subject to the rule which prohibits discrimination, as to when and by whom payment should be made. By the provisions of Section 7 of the conditions of the bill of lading the consignor is given opportunity to relieve himself from liability for freight charges by signing the nonrecourse clause on the face of the bill. 52 I. C. C. 671. See

also *Chicago Junction Ry. Co.* v. *Duluth Log Co.,* 161 Minn. 466, 471, 202 N. W. 24; *Missouri-Pacific R. Co.* v. *Sorrell* (1937) 21 Fed. Supp. 886, 888; *Pennsylvania R. Co.* v. *Marcelletti,* 256 Mich. 411, 240 N. W. 4, 78 A. L. R. 923; *Western Maryland Ry. Co.* v. *Cross,* 96 W. Va. 666, 123 So. 572; cases annotated, 24 A. L. R. 1163, 78 A. L. R. 926, 105 A. L. R. 1216; 13 C. J. S., p. 748 et seq.; 9 Am. Jur., p. 791 et seq.

The case which is the main dependence of the defendant for judicial authority is *Chesapeake & Ohio Ry. Co.* v. *Southern Coal, Coke & Mining Co.* (1929) 254 Ill. App. 238, in which denial of recovery of freight charges on coal from a consignee was affirmed by the appellate court. In that case, however, the defendant consignee was not also the consignor, no bills of lading were issued by the plaintiff, the cars of coal being shipped on "mine cards" or "memo waybills," and no contracts were signed by the defendant except reconsigning orders which instructed the plaintiff to deliver the cars to a third party, "charges to follow." The plaintiff delivered the cars to the party specified, which was on its credit list, without collecting the freight charges and was unable to collect later because the company to which delivery was made had become insolvent. The court held (p. 246) that as there was no bill of lading which undertook to provide, as a matter of contract, who should pay the freight, and the mine cards or memo waybills were not signed by the defendant and contained no provision from which it could be said that there was any contractual obligation on the part of the defendant to pay it, liability therefor was to be determined by the provisions of the reconsignment orders as the only written contracts pertaining to freight charges. The case is obviously distinguishable factually from the instant case and others which are similar. There is no merit in the de-

fendant's often reiterated claim that affirmance of this case by the United States Supreme Court is inferable from its denial of writ of certiorari (282 U. S. 860, 51 Sup. Ct. 34); that "imports no expression of opinion upon the merits of the case." *United States* v. *Carver,* 260 U. S. 482, 490, 43 Sup. Ct. 181. The same case also recognizes (p. 248) that a consignor, by signing the provision in the uniform bill of lading prescribed by the interstate commerce commission, "may direct the railroad company not to deliver the shipment to the consignee until the charges are collected and thereby the shipper is relieved from being compelled to pay any charges on such shipment." It also recognizes (p. 244) that Illinois' highest court, the Supreme Court, has held, in *New York Central R. Co.* v. *Philadelphia & Reading Coal & Iron Co.* (1919) 286 Ill. 267, 121 N. E. 581, that when a carrier delivers freight to the consignee without collecting the charges and is thereafter unable to collect because of consignee's insolvency, the carrier is not estopped from collecting from the consignor. That case holds (p. 269) that under all the authorities the consignor is primarily liable for transportation charges, and quotes, as do other similar cases, from *Central of Georgia Ry. Co.* v. *Birmingham Sand & Brick Co.,* 9 Ala. App. 419, 64 So. 202, an apt statement of the reason underlying the liabilities, on their face somewhat rigorous, of parties to a shipment in interstate commerce (p 425): "The necessary effect of all [the] decisions, construing and applying the Interstate Commerce Act, when considered together, is . . . that the carrier cannot, by any act, estop itself from exacting the lawful freight rate. If the carrier could so estop itself, then it would lie within the carrier's power, by purposely putting itself in a position where it could not exact the lawful rate of a shipper it desired to favor, to render nugatory

one of the main designs of the act, the prevention of discrimination between shippers; and for the law to countenance the doctrine of estoppel in cases like this is for the law to say through the courts that the carrier is estopped from doing what the statute mentioned plainly requires that it must do—collect the lawful rate in all cases, and nothing greater and nothing less, by any means or device whatsoever."

*New York Central R. Co.* v. *Brown* (1937) 281 Mich. 74, 274 N. W. 715, appears to be the most recent pertinent decision by a court of last resort. That was an action brought against Brown-Ward Company of Detroit, the original consignee, to recover freight charges on three carloads of coal shipped to it by a West Virginia mining company. While the cars were in transit under the uniform bill of lading the defendants directed the plaintiff to divert the cars to one Weast to order, and Weast reconsigned them to one DuPuis doing business as the Holmes Coal Company, both reconsigning orders specifying "Charges to follow." The cars were delivered without the charges being collected, DuPuis was adjudicated a bankrupt, and no portion of the freight charges was collected from him. The defendants contended that upon the facts the carrier contracted to collect from the reconsignee and therefore could not recover from the defendants, relying, as does the present defendant, upon *Chesapeake & Ohio Ry Co.* v. *Southern Coal, Coke & Mining Co.*, supra. The court, however, adopted and followed the *Ross Lumber Co.* case, and cited (p. 81) numerous others, and held that "the act of dominion upon the part of the defendants in ordering reshipment created a liability upon them and the same was not discharged by the extension of credit to the Holmes Coal Company." In *Pennsylvania R. Co.* v. *Lord & Spencer, Inc.* (1936, Massachusetts) 3 N. E. (2d)

231, 105 A. L. R. 1211, it is said (p. 233): "The directions given by the defendant in the diversion order, . . . 'All charges to follow the cars,' would not alone relieve the defendant as the reconsignor from liability for freight charges. Such directions add a cumulative remedy against the new consignee and do not release the consignor," citing *Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co.* v. *Fink*, 250 U. S. 577, 40 Sup. Ct. 27. The most recent case cited is *New York Central R. Co.* v. *Little-Jones Coal Co.* (1938) 25 Fed. Supp. 337, in the District Court for the Northern District of Illinois, wherein the defendant, which was both consignor and consignee of interstate shipments of coal, was held liable as consignee for a balance of freight charges which the plaintiff, because of bankruptcy of the reconsignee, was unable to collect from it, notwithstanding that as consignor the defendant had signed the nonrecourse clause, the reconsignment orders specified "Charges follow. We are not responsible for freight charges," and the shipments were delivered to the reconsignee without first collecting the freight charges. The opinion (p. 340) notes that an opposite view had been held in a minority of cases in the Illinois Appellate Court but that the Supreme Court of that state had not passed on the question, and the decision follows the *Ross Lumber Co.* case, supra, and the cases which sustain it.

Although the defendant goes no farther than to admit that the relevant decisions conflict, it appears that the cases which are factually analogous are unanimous in supporting recovery from the defendant, which is in the position of both consignor and original consignee and of owner. The actual main contention and plea of the defendant, as revealed in its reply brief and in argument, is for an adjudication contrary to the other decisions, claiming that they are in a

"chaotic condition" and the reasoning thereof "motivated by the unreasonable fear that otherwise the opportunity for unlawful discrimination may be created." As to these criticisms we find the pertinent decisions significantly consistent, especially considering their number and the variety of factual situations involved, and the precautions taken to avoid giving opportunity for unlawful discrimination in the matter of freight charges seem not unreasonable in view of the motivating principle and purpose.

The defendant further strongly and repeatedly urges that prior decisions be departed from on the ground that "reason dictates" that a shipper, in interstate commerce, to himself "has a right implied in the contract to control and condition the delivery upon payment of the freight and refrigeration charges, and the carrier an implied obligation to comply therewith, breach of which absolves the former's obligation for the charge." While such a contention is not specifically discussed in the cases which have come to our attention, it was implicit in them and precluded by the reasoning and results. This is particularly true as to the obligation of the consignor. As repeatedly held, the uniform bill of lading expressly accords the shipper the privilege of absolving himself from liability for charges by executing the nonrecourse clause and thereby excludes implication of a right to attain the same object in some other and undefined way. This conclusion is confirmed by the attitude of the interstate commerce commission in 52 I. C. C. 671, *In the Matter of Bills of Lading.* It was proposed in behalf of the shipper that Section 7, already quoted, be so amended that the consignor could avoid liability for charges not only by signing the nonrecourse clause on the face of the bill but also by stipulating "in a written order of reconsignment" that the carrier shall not make de-

livery without requiring payment of the charges. The request did not go so far as to extend the privilege, also, to a delivery order, as is now proposed to be accomplished by implication, but was refused by the commission, which said (p. 722): "Its effect would be to impose upon the carrier additional risk and responsibility . . . in respect of the security of compensation for its services. . . . Its legal obligations are confined to transportation and the duties incident thereto. It is not obligated to assume risks for the convenience of the consignor which have no direct relationship to its service of transportation." Since the liability of the defendant is as consignor as well as consignee there is no occasion to decide whether, notwithstanding the decisions to the contrary, already discussed, any such implied right could enure to the advantage of a consignee who is not, also, the consignor and liable as such. The conclusions holding the defendant liable for the charges are sustained.

In addition to its answer to the complaint, the defendant pleaded by way of recoupment that the plaintiff, by failing to comply with the delivery order in that it delivered the shipment without collecting the freight and other charges, converted the same and claimed to recoup the value thereof, "in diminution and extinction of the plaintiff's claim for freight and refrigeration charges." As to this, the trial court concluded that the delivery was not a breach of contract, misdelivery or conversion such as to entitle the defendant to damages by way of recoupment. The finding includes (paragraph 14) a statement that it is agreed that if the plaintiff is entitled to recover the charges and defendant entitled to recoupment, defendant's damages are equal to plaintiff's charges. The defendant assigns error in the conclusion that there was no right of recoupment, and in refusing to con-

clude the contrary, and, according to the defendant's draft-finding, that the damages to the defendant "are those described in paragraph 14 of the finding." As the finding, which is unattacked, does not contain any facts disclosing any loss or damage to the defendant caused by the delivery to Shore Brothers other than liability for the freight and refrigeration charges, if it be held liable for them, the necessary inference is that those charges constitute the damage sought to be recouped, and the right thereto is to be determined accordingly. As to this, *Pennsylvania R. Co.* v. *Marcelletti*, supra, is in point, and if followed, as in our opinion it logically must be, is decisive. That was an action for the amount of an undercharge in amount of freight charges arising from the carrier's mistake, instead of, as here, for the entire charge, but we see no distinction in principle material to the question now under consideration. It was held (p. 416) that to allow as a counterclaim, as the trial court did in that case, the amount of the freight charges as the damage resulting from the delivery without collecting the freight, would be contrary to the authorities as to the liabilities of the parties "and in contravention of the provision against discrimination embodied in the Interstate Commerce Act. Defendant in asserting his counterclaim relies [as does the present defendant] upon *Chicago & North Western Ry. Co.* v. *Lindell*, 281 U. S. 14, 50 Sup. Ct. 200 [74 L. Ed. 670]. We think the case is not applicable to the issue here presented, which involves nothing more than the right of the carrier to collect the full amount of its charge for the shipment; whereas in the case last above cited the shipper had an independent claim against the carrier for damage to goods in transit." The instant case is similarly distinguishable. Upon the finding the only damage resulting from the delivery without col-

lecting the charges for which the defendant could claim recoupment would be the charges for which it is held liable, and the practical effect of allowing that damage to offset the charges would be to discriminate in favor of the defendant by absolving it from payment of the transportation charges. "Instances of individual hardship cannot change the policy which Congress has embodied in the statute in order to secure uniformity in charges for transportation." *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Fink,* 250 U. S. 577, 582, 40 Sup. Ct. 27; *Louisville & Nashville R. Co.* v. *Maxwell,* 237 U. S. 94, 35 Sup. Ct. 494. The aim of the Interstate Commerce Act "was to secure for each and every shipper of goods in interstate commerce absolute equality of reasonable rates, uniform in application, without discrimination or preference. The railroads and the shipper are bound inexorably to follow the rate published." *New York, N. H. & H. R. Co.* v. *York & Whitney Co.,* 215 Mass. 36, 39, 102 N. E. 366. Such hardship, including denial of recoupment, as devolves upon the parties "arises out of the enforcement of a positive rule established for the accomplishment of a broad public purpose." Idem p. 41; 13 C. J. S., p. 855. It follows that irrespective of whether there was a misdelivery or not, there was no error in the ultimate conclusion that the defendant is not entitled to recoup as damages the amount of the transportation charges for which it was held liable.

There is no error.

In this opinion the other judges concurred.