PENNSYLVANIA RAILROAD COMPANY *v.* F. E. MATHIAS
LUMBER COMPANY.

[No. 16,963.   Filed March 13, 1943.]

*Parker, Crabill, Crumpacker, May, Carlisle & Beamer,* of South Bend, for appellant.

*Harman & Harman,* of Elkhart, for appellee.

ROYSE, J.—Appellant brought this action against appellee for freight charges on a carload of lumber shipped from Simmesport, Louisiana to Sturgis, Michigan. Upon proper request the facts were specially found and the court stated its conclusions of law thereon, which were two in number. Judgment upon the conclusions of law was rendered in favor of appel-

lee. No question is raised in this appeal as to the correctness of the findings of fact. There are two errors assigned here: (1) The trial court erred in its conclusion of law No. 1, that the law is with the defendant; (2) The trial court erred in its conclusion of law No. 2, that the defendant is not indebted to the plaintiff, and judgment should be entered for the defendant, and for costs.

The facts were stipulated and those pertinent to a determination of the question presented by this appeal are substantially as follows:

In July, 1937, the appellee had purchased and owned a carload of rough lumber which, on the 27th day of July, 1937, the Hyde Lumber Company, Inc., at the request of appellee, shipped to appellee at Sturgis, Michigan. This shipment was delivered to the Texas & Pacific Railway Company at Simmesport, Louisiana, for transportation in a single, continuous and uninterrupted interstate transit over a line of railroads of which the appellant was the final and delivering carrier. Shipment was made on a straight bill of lading, on the face of which the shipper had executed a "no recourse" clause, thus relieving itself from any liability for the freight charges. Before the carload of lumber arrived at Sturgis, Michigan, the appellee mailed to and the appellant received the following instructions:

"Freight Agent                 July 24, 1937
Penna Railroad Co.           Elkhart, Ind.
Sturgis, Michigan
Dear Sir:
   We have M. P. Car No. 31244 consigned to us at Sturgis and on arrival, please deliver to the Royal Wilhelm Furniture Company. Kindly use our name as shippers on the expense bill; also, omitting point from which car was shipped.
                Yours truly,
                  F. E. MATHIAS LBR. CO."

Pursuant to these directions, without demanding or receiving the freight charges, appellant made delivery to the Royal Wilhelm Furniture Company. Following such delivery the Royal Wilhelm Furniture Company was declared bankrupt and its assets fully liquidated. Appellant duly filed a claim against the bankrupt estate for the freight charges, which was allowed as a general claim, on which no payment ever has or will be made. Before filing the aforesaid claim appellant notified appellee that it would file such claim and would look to appellee for any unpaid balance of the freight charges. The proper freight charge was $258.83. Appellant demanded said sum of appellee who refused to pay the same. Hence this action.

The question presented by this appeal has not heretofore been passed upon either by this court or by our Supreme Court. The shipment in the instant case being an interstate shipment, it was, in so far as applicable, governed by the statutes of the United States. Where not so governed, the rights of the parties depend upon the principles of the common law. *Pennsylvania R. R. Co.* v. *Lord & Spencer, Inc.* (1936), 295 Mass. 179, 3 N. E. (2d) 231, 232.

Appellee contends the question presented by this appeal is federal in nature and therefore this court is bound to follow the decisions of the federal tribunals.

"Where a question is federal in its nature, the decisions of the supreme court of the United States are absolutely binding on the various state courts and must be followed." 21 C. J. S., p. 365, § 206; 15 C. J., p. 930, § 318. While there is a conflict as to whether the decisions of the lower federal courts are binding on state courts, the weight of authority is, that while such decisions have a persuasive authority, they are not binding on the state courts. This is cer-

tainly true when the decisions of such federal courts themselves are in conflict. 21 C. J. S., p. 377, § 206; *Brown* v. *Palmer Clay Products Co.* (1935), 290 Mass. 108, 185 N. E. 122, 123; *State ex rel.* v. *Taylor* (1923), 298 Mo. 474, 251 S. W. 383, 387.

The Supreme Court of the United States has not, so far as we are informed, passed on the question presented by this appeal. The decisions of the various United States Circuit Courts of Appeal, and particularly those of this 7th Circuit, are in conflict on the question presented by this appeal. *Dare* v. *New York Central R. Co.* (1927—2nd Cir.), 20 F. (2d) 379; *Wabash Ry. Co.* v. *Horn et al.* (1930—7th Cir.), 40 F. (2d) 905; *New York Central Railroad Co.* v. *Transamerican Petroleum Corporation* (1940), 108 F. (2d) 994.

Appellant contends the ultimate question to be decided in this case, that is, the liability or nonliability of appellee for the freight charges, is not in any sense a federal question. This contention is based upon the premise that the federal statutes impose no obligation on a particular party to pay the charges for an interstate shipment. The case of *Louisville & Nashville R. Co.* v. *Central Iron & Coal Co.* (1924), 265 U. S. 59, 68 L. Ed. 900, 44 Sup. Ct. 441, 443, is cited as authority for this proposition. In that case the Supreme Court of the United States said: "Ordinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one. . . . But delivery of goods to a carrier for shipment does not, under the Interstate Commerce Act (Comp. St. 8563, et seq.), impose upon a shipper an absolute obligation to pay the freight charges. The tariff did not provide when or by whom the payment should be made. As to these matters car-

rier and shipper were left free to contract, *subject to the rule which prohibits discrimination.*" (Our italics.)

It is to be noted the freedom of the carrier and shipper to contract as to freight charges is restricted by the rule prohibiting discrimination. In the case of *Pittsburgh C. C. & St. L. Ry. Co.* v. *Fink* (1919), 250 U. S. 577; 63 L. Ed. 1151, 40 Sup. Ct. 27, after pointing out there was a conflict of authority as to the liability at common law for the payment of freight charges, the court said: "However this may be, in our view the question must be decided upon consideration of the applicable provisions of the statutes of the United States regulating interstate commerce. The purpose of the Act to Regulate Interstate Commerce, frequently declared in the decisions of this court, was to provide one rate for all shipments of like character, and to make the only legal charge for the transportation of goods in interstate commerce the rate duly filed with the Commission. In this way discrimination is avoided, and all receive like treatment, which it is the main purpose of the act to secure." We believe this reasoning applies to the question presented in the instant case.

We have seen that ordinarily the shipper or consignor is primarily liable for freight charges. *Louisville & Nashville R. Co.* v. *Central Iron & Coal Co., supra.* However, when a consignee accepts delivery of the goods he becomes liable for the payment of the freight charges whether they are demanded at the time of delivery or at a later date. *Pittsburgh C. C. & St. L. Ry. Co.* v. *Fink, supra.* Such liability may be incurred when there is no physical delivery to consignee, or when there is constructive delivery ·as when the consignee reconsigns the shipment, as was done in this case. The leading case on this proposition

is *New York Cent. R. Co.* v. *Warren Ross Lumber Co.*
(1922), 234 N. Y. 261, 137 N. E. 324. The facts in that
case were as follows: "On or about May 16, 1912, the
S. L. Eastman Company of Saginaw, Michigan, shipped
a car of lumber consigned to defendant, Warren Ross
Lumber Company of Jamestown, New York, destination
Boston, Massachusetts. Before the arrival of the car at
Boston, the Warren Ross Lumber Company wrote the
following letter to plaintiff: 'Dear Sir: Upon arrival
of car A. G. S. 8919, consigned to ourselves, please
deliver this immediately to Schieck-Johnson Company,
of your city, upon payment of freight charges. If you
are not the proper party to handle this matter, please
hand it to the official in charge, and oblige, Very truly
yours, Warren Ross Lumber Company.' In compliance
with this letter, plaintiff delivered the car to the
Schieck-Johnson Company, but it did not collect the
freight charges. It now seeks to collect its bill for such
charges from the defendant, the Schieck-Johnson Com-
pany having become bankrupt." In holding appellee
liable for the freight charges in that case, the court
said:

> "While no contractual relation arises between
> carrier and consignee by the mere designation of
> the latter as consignee, the consignee becomes
> liable for the freight charges when an obligation
> arises on his part from presumptive ownership,
> acceptance of the goods and the services rendered
> and the benefits conferred by the plaintiff for such
> charges.
>
> "As to plaintiff, defendant stood in the relation
> of owner of the carload of lumber. The bill of
> lading designated it as consignee. That fact is in
> itself evidence of ownership. It does not appear
> from the agreed facts that plaintiff had knowledge
> or notice that defendant was not the owner, or that
> defendant was not in fact such owner. The Schieck-
> Johnson Company might, for all that appears,

have been the agent of defendant whose duty it was to take delivery on its behalf. As defendant was the presumptive owner, if it accepted the freight in the capacity of owner, the law implied a promise on its part to pay the charges. . . . When it wrote the letter directing the delivery without notifying the plaintiff that it was not the owner of the goods, it acted either as consignee or volunteer. We may not assume that its letter was the act of a meddler. We must, therefore, presume that it wrote as consignee. It follows that it accepted the goods by an act of ownership when it exercised dominion over them by giving directions for their delivery and the plaintiff was justified in treating it as owner of the goods. (Citing authorities.) It thereby entered into the contract expressed in the bill of lading to pay the charges and became liable to pay such charges. . . ."

The above principle has been repeatedly approved. *New York Central R. R. Co.* v. *Brown* (1937), 281 Mich. 74, 274 N. W. 715; *Pennsylvania Rd. Co.* v. *United Collieries, Inc.* (1938), 59 Ohio App. 540, 18 N. E. (2d) 1000; *Wabash Ry. Co.* v. *Horn, supra; Dare* v. *New York Central R. Co., supra.*

The rule announced in the Warren-Ross Lumber Company case, *supra,* is in complete harmony with the reasons assigned by the Interstate Commerce Commission when it denied petition of the shippers to permit reconsignors to have the benefit of the "no recourse" provision. In denying this petition, the commission said: "We do not regard the shippers' proposal favorably. Its effect would be to impose upon the carrier additional risk and responsibility, not in respect of any common-law or statutory duty of *transportation,* but in respect of the security of compensation for its services. The end desired by the shippers has to do with the convenience and security of their oftentimes speculative and impromptu commercial transactions. The business

of the carrier is to furnish transportation. Its legal obligations are confined to transportation and the duties incident thereto. It is not obligated to assume risks for the convenience of the consignor which have no direct relationship to its service of transportation." 52 I. C. C. Reports, 722.

The similarity of the facts in the case at bar to those in the Warren-Ross case, *supra,* is striking indeed. The chief difference was that in the Warren-Ross case the consignee directed the carrier to collect the charges from the reconsignee, while in the case at bar no such direction was given; however, this difference in facts makes the rule of that case even stronger in the instant case.

Appellee, in support of its contention, relies principally upon the case of *New York Central R. Co.* v. *Transamerican Petroleum Corp., supra,* and insists this court is bound by the decision in that case, particularly since we are in the 7th federal circuit. That case criticizes the rule adopted in the Warren-Ross Lumber case, *supra.* We believe the decision in the Transamerican case, *supra,* is clearly against the weight of authority and is based on reasoning which, if followed, might easily thwart the real purpose of the Interstate Commerce Act (49 U. S. C. A., § 1, et seq.), that the carrier collect the legal rate for freight without discrimination.

If the rule adopted in that case is followed, a carrier bent on granting discrimination to a favored shipper could very easily, by secretly arranging with such shipper to reconsign his shipment to a financially irresponsible party from whom it could not collect the freight charges, place itself in a position where it could not collect such charges, thereby defeating the purpose of the act. The rule is well

established that a carrier may not do any act in relation to the collection of freight charges which might in any manner estop itself from exacting the lawful freight rate. For, as said in the case of *Central of Georgia Ry. Co.* v. *Birmingham Sand & Brick Co.* (1913), 9 Ala. A. 419, 425, 64 So. 202, 204, "If the carrier could so estop itself, then it would lie within the carrier's power, by purposely putting itself in a position where it could not exact the lawful rate of a shipper it desired to favor, to render nugatory one of the main designs of the act, the prevention of discrimination between shippers; and for the law to countenance the doctrine of estoppel in cases like this is for the law to say through the courts that the carrier is estopped from doing what the statute mentioned plainly requires that it must do—collect the lawful rate in all cases, and nothing greater and nothing less, by any means or device whatsoever."

"Estoppel could not become the means of successfully avoiding the requirement of the act as to equal rates, in violation of the provisions of the statute " *Pittsburgh C. C. & St. L. Ry. Co.* v. *Fink, supra.*

Furthermore, the facts in the Transamerican case, *supra,* are readily distinguishable from the facts in the instant case. In that case it was stipulated that at the time of reconsignment the reconsignee was the owner of the shipment. It was further stipulated that the shipments in question were not delivered to defendant, reconsignor, or to any of its agents or employees, nor were they delivered in its behalf. It was further stipulated that the defendant, in reconsigning the shipment, directed the carrier (plaintiff) to collect the freight charges from the reconsignee. In the instant case it is stipulated that appellee was the owner of the shipment. The order directing the reconsignment speci-

fically directed the carrier (appellant) to use appellee's name as shipper and the carrier was not instructed or directed to collect the freight charges from the recon-signee. Under the facts as stipulated in this case and what we believe to be the well-established weight of authority, we are of the opinion the appellee is liable for the freight charges, and therefore the trial court erred in its conclusions of law Nos. 1 and 2.

We are appreciative of the very excellent briefs of both the appellant and apellee in this case.

The judgment of the Elkhart Superior Court is reversed, with instructions to said court to restate its conclusions of law Nos. 1 and 2 in conformity with the views expressed in this opinion.

NOTE.—Reported in 47 N. E. (2d) 158.