**ATLANTIC COAST LINE R. CO. v. CLINCHFIELD FUEL CO.**

**C. A. No. 1066.**

United States District Court
W. D. South Carolina, Spartanburg Division.

Jan. 11, 1951.

V. E. Phelps, Wilmington, N. C., Douglas McKay, Columbia, S. C., for plaintiff.

Daniel, Russell & Means, Spartanburg, S. C., for defendant.

WYCHE, Chief Judge.

This action was brought by the plaintiff to recover freight transportation charges on four separate shipments of coal originating at Virginia points and consigned by the defendant in May, 1949, to the Sumter Textile Mills at Sumter, South Carolina, via Clinchfield Railroad Company, two intermediate carriers and the plaintiff, the delivering carrier.

The material facts are substantially as follows: No bills of lading were issued by the origin carrier covering any of the shipments; it was the general custom of the defendant and the initial carrier in shipping coal via its line at the points of origin not to issue or take out the usual bills of lading prescribed by the Interstate Commerce Commission, but, to attach to each car when loaded at the mines a mine card; according to such custom, delivery to the initial carrier of shipments made by the defendant was made at the mine tipples with a mine card attached to the car when loaded, which mine cards were used for the convenience of both the shipper and initial carrier. Each of the mine cards attached to these four cars had the printed name of the origin carrier at the top, and space to show the date of shipment, or when the car was tagged for shipment, the kind of coal shipped, car number and initial, name of consignee and final destination and route, as well as the scale weights of the coal and order number, etc. The mine cards on two of the cars in question were printed and furnished by the Clinchfield Railroad Company and on the back of these two cards were printed "Instructions", one of which stated that "The use of this form of card is authorized only for movement from mine to scale yards, and conductors must not move any cars to which such cards have been attached"; these instructions were not on the two cards supplied by the defendant; at the bottom of the two cards furnished by the initial carrier was a printed statement "No recourse on shipper", followed by a blank space underneath which were the words "Shipper's signature, if desires this clause to apply", but this space was not signed by the shipper on these two mine cards; the following was stamped on all of the mine cards: "The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. Clinchfield Fuel Co." It is admitted that the uniform straight bill of lading prescribed by the Interstate Commerce Commission for use by common carriers engaged in interstate commerce, was lawfully on file as an interstate tariff at the time of the movement of the cars in question and for some years prior thereto; Section 7 of the "Contract terms and conditions" of said bill of lading provides who shall be liable for transportation charges on shipments, including the owner or consignee, and further provides as follows: "The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges." The stipulation on the face of the uniform bill of lading above mentioned, which Section 7, above quoted, requires to be signed by the consignor in order to relieve it of responsibility for freight charges, reads as follows: "Subject to Section 7 of conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges." A space for "Signature of

994

consignor" is provided thereafter. In the case of the four shipments involved in this suit, it appears that the delivering carrier, plaintiff herein, did not collect the freight charges due from the consignee on delivery of the four cars and brought this suit against consignor to recover the lawful transportation charges; at the time of the shipment and delivery of the cars the consignee was insolvent, but it is not shown nor admitted that demand was made on the consignee for payment at the time of delivery, and defendant denies that the cars were delivered inadvertently without collecting freight charges, and alleges that delivery was made to consignee on its credit "deliberately and voluntarily and unlawfully".

Plaintiff contends that defendant consignor remains liable for the transportation charges on the shipments for the reason that no bill of lading was issued and the consignor did not execute Section 7 on the face of any uniform bill of lading as specifically required by Section 7 of the "Contract terms and conditions" on the back of the uniform bill of lading prescribed by the Interstate Commerce Commission and filed as an interstate tariff, and defendant contends that under the long-established course of shipping on mine cards between defendant and the initial carrier, the attachment of the mine cards to the cars with the words stamped thereon that "The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges" was the "legal equivalent" of the "formal execution" of the nonrecourse clause prescribed by Section 7, and was a "substantial compliance" with Section 7.

■■■ The Interstate Commerce Act, § 6(7), 49 U.S.C.A. § 6(7), prohibits carriers from charging or collecting a greater, less or different compensation for transportation of property than the charges specified in the tariff lawfully on file; it prohibits the refund by any device of any part of the charges so specified, and prohibits the carrier from extending to any shipper any privileges or facilities except such as are specified in the tariffs. It is well settled by the authorities that no act or omission of

the carrier, except the running of limitations, can estop or preclude it from enforcing payment of the full amount of the tariff charges by a person liable therefor; Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 65, 44 S.Ct. 441, 68 L.Ed. 900; that neither ignorance nor misquotation of rates or any equitable considerations, will excuse or relieve the carrier of the duty of collecting the full lawful rate; Louisville & N. R. Co. v. Central Iron Co., 265 U.S. 59, 65, 44 S.Ct. 441, 68 L.Ed. 900; Maxwell, 1915, 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853; Baldwin v. Scott County Milling Co., 1939, 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409; and generally evidence of custom is not admissible to vary the terms of lawful interstate tariffs; Standard Hotel Supply Co. v. Pennsylvania R. Co., D.C., 65 F.Supp. 439, 443. The alleged long-established custom between defendant and the initial carrier, for the convenience of the parties, in making shipments without the issuance of a uniform bill of lading, in my opinion, cannot estop the plaintiff from insisting on compliance with the requirements of Section 7 of the uniform bill of lading as to the proper execution of that section on the face of the document. The uniform bills of lading which were prescribed by the Interstate Commerce Commission, as authorized by an Act of Congress, and are filed as an interstate tariff, have the force of federal law. Illinois Steel Co. v. Baltimore & O. R. Co., 1944, 320 U.S. 508, 513, 64 S.Ct. 322, 325, 88 L.Ed. 259. In this case, after quoting the provisions of Section 7 of the uniform bill of lading, the Supreme Court said that "Under these provisions, if the nonrecourse clause is not signed by the consignor, he remains liable to the carrier for all lawful charges."

■■■ Where no bill of lading is actually issued, all of the provisions of the uniform bill of lading, prescribed by the Commission and filed as a tariff, will apply to the shipper and carrier in full force, just as though a bill of lading were actually issued. 13 C.J.S., Carriers, § 123b, pages 237, 238; Charles J. Webb Sons Co., Inc., v. Central R. Co. of New Jersey, D. C., 28 F.2d 392; New York Cent. R. Co. v. Lazarus, 2 Cir.,

278 F. 900; New England Fruit & Produce Co. v. Hines, 97 Conn. 225, 116 A. 243, 245; Western Maryland Ry. Co. v. Cross, 96 W.Va. 666, 123 S.E. 572, 575; Chesapeake & O. Ry. Co. v. Glogora Coal Co., 113 W.Va. 796, 169 S.E. 471, certiorari denied, 290 U.S. 658, 54 S.Ct. 73, 78 L.Ed. 569. In the case of Western Maryland Ry. Co. v. Cross, supra, 123 S.E. 572, 575, where no bill of lading was actually issued, the court said: "By this provision it is very clear that the consignor is always liable for the freight and all other lawful charges, *except where he stipulates by signature in the place and manner prescribed by the provision. Here as no bill of lading was issued defendant stipulated nothing in the manner provided above.* Of course, it may be thought that as no bill was issued defendant had no opportunity to save himself; but we must remember, as Judge Litz suggested in Hubbard Grocery Co. v. Payne, supra [94 W.Va. 273, 118 S.E. 152], that the uniform bill of lading is prescribed under direct authority of Congress, *and it is intended to operate and does operate* in all cases where a carrier receives goods for transportation into other states. *Both parties were bound to respect the provisions of the bill of lading so prescribed even though none was issued covering the particular shipment involved here.* Defendant did not protect himself in the manner provided and cannot escape responsibility." (Emphasis added.)

■ In the Glogora Coal Company case, supra, 169 S.E. 471, the shipments were of coal made on a " 'Mine Card Billing,' under usage and custom then prevailing in that district", and the court considered Section 7 of the uniform bill of lading and held the consignor liable for the charges because it had not properly executed Section 7, even though the mine card billing carried a notice stamped thereon by the consignor that the carrier at destination should not make delivery until the freight was paid. In that case, the court emphasized the fact that the shipment was made to a non-agency station to which the published tariffs required that the freight charges be prepaid, and hence failure to prepay violated that tariff provision. However, the uniform bill of lading is also an interstate tariff, having the effect of federal law, and where it clearly provides, as it does, that Section 7 can only be executed by the consignor by signing in the space provided on the face of the uniform bill of lading, compliance with the section can only be effectuated by execution in the place specified, and it cannot be legally executed merely by stamping a notice to collect the charges from the consignee on a mine card which is attached to the shipment.

■ The history of the adoption of the uniform bills of lading by the Interstate Commerce Commission for use by the carriers indicates that Section 7 of the uniform bill of lading cannot be executed by a consignor so as to protect himself from liability for charges in the manner attempted in this case, or in any other manner than the execution of the section by signature on the face of the bill of lading. In the case of Illinois Steel Co. v. Baltimore & O. R. Co., supra, 320 U.S. 508, at page 510, 64 S.Ct. 322, at page 324, the Supreme Court declared that in promulgating the uniform bills of lading, pursuant to Congressional authority, "the Commission has stated that it was doing so in the interest of uniformity and to prevent discriminations. 52 I.C.C. 671, 676, 677, 678; 64 I.C.C. 357, 363, 364. It has found that the prescribed forms are just and reasonable, 52 I.C.C. 671, 740, and that any other would be unreasonable, 64 I.C.C. 357, 360, 361, 364." The decision of the Commission referred to by the court in 52 I.C.C. 671, is its decision In the Matter of Bills of Lading, in which the Commission prescribed the present uniform bill of lading, including Section 7 of the Contract conditions, and in discussing the provisions of Section 7 the Commission states on page 721, that "In order to secure exemption from liability for the freight charges in case the shipment is delivered to the consignee without the collection of such charges, the consignor is required to append his signature to the following statement in a space on the face of the bill of lading provided for that purpose: 'The carrier shall not make delivery of this

shipment without payment of freight and other lawful charges.'" The Commission then states that the shippers desired that the consignor's stipulation in the bill of lading for exemption from liability for freight charges "be carried over to 'a written order of reconsignment'", stating the shippers' reasons for their desire that the consignor be permitted to execute Section 7, not alone by signature on the face of the bill of lading but also by so stating in a written order of reconsignment. The Commission denied the shippers' request that Section 7 be so amended, and in doing so said, on page 722: "We do not regard the shippers' proposal favorably. Its effect would be to impose upon the carrier additional risk and responsibility, not in respect of any common-law or statutory duty of *transportation,* but in respect of the security of compensation for its services. The end desired by the shippers has to do with the convenience and security of their oftentimes speculative and impromptu commercial transactions. The business of the carrier is to furnish transportation. Its legal obligations are confined to transportation and the duties incident thereto. It is not obligated to assume risks for the convenience of the consignor which have no direct relationship to its service of transportation. The Commission is not disposed to approve the laying upon carrier of duties or obligations extraneous to the service of transportation, except and unless to remove unlawful discriminations, and such are not shown to exist here. The suggestion of the shippers is, therefore, disapproved."

It is obvious that if the Commission, the framers of the uniform bill of lading, would not permit a consignor to execute Section 7 in a written order of reconsignment, Section 7 could not be executed on any other separate document or elsewhere than on the face of a bill of lading, and certainly could not be executed by merely stamping a clause on a mine card. The consignor, in order to shield itself from liability for freight charges must execute the section on the face of a bill of lading as expressly required by the Commission. See, also, New York, N. H. & H. R.

Co. v. California Fruit Growers Exchange, 1939, 125 Conn. 241, 5 A.2d 353, 359; Pennsylvania R. Co. v. F. E. Mathias Lumber Co., 1943, 113 Ind.App. 133, 47 N.E.2d 158, 161; Berry v. Best Motor Lines, Tex.Civ. App., 209 S.W.2d 430, 431.

 I must conclude that the defendant consignor did not lawfully or properly execute the non-recourse clause contained in Section 7 of the uniform bill of lading prescribed by the Interstate Commerce Commission under authority of Congress, and hence remains liable to the carrier for the full lawful tariff charges applicable to the shipments.

The motion of the plaintiff for summary judgment should be granted and

It is so ordered.